UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO,
*et al.*,

        *Plaintiffs,*

  v.

U.S. FEDERAL LABOR RELATIONS
AUTHORITY,

        *Defendant.*

CASE NO. 1:26-cv-11747-DJC

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
PLAINTIFFS' EXPEDITED MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Plaintiffs hereby state the following undisputed facts in support of their Expedited Motion for Summary Judgment. The first section identifies the undisputed facts pertinent to the merits. Because by agreement of the parties this Summary Judgment is being submitted before Defendants have answered or otherwise responded to the Complaint, the second section, out of an abundance of caution, identifies undisputed facts establishing Plaintiffs' standing to sue.

**Facts Relating to the Merits**

1.   After the enactment of the Federal Service Labor-Management Relations Statute ("FSLMRS"), codified at 5 U.S.C. Ch. 71, the Federal Labor Relations Authority ("FLRA" or "Authority") issued "interim rules" that governed the processing of cases including representation cases. 44 Fed. Reg. 44740, 44740–76 (July 30, 1979).

2.   The FLRA stated in its Federal Register publication of the 1979 interim rules that there was an "urgent need to avert a serious disruption of the Federal labor-management relations

1

program and to avoid any prejudice to the rights of interested parties" and therefore "good cause for immediately publishing these interim rules and regulations." *Id.* at 44740.

3.    Under the 1979 interim rules, Regional Directors (directors of regional offices of the FLRA appointed pursuant to 5 U.S.C. § 7105(d)) were delegated authority to, *inter alia*, investigate representation petitions, approve agreements for consent elections, and to issue notices of hearings. *Id.* at 44740, 44755–57 (§§ 2422.4, 2422.6, 2422.7, 2422.8).

4.    The FLRA published final rules that governed the processing of cases including representation cases in January 1980. 45 Fed. Reg. 3482, 3482–524 (Jan. 17, 1980).

5.    The Federal Register publication of the 1980 final rules stated that "the Authority decided that for the present it would not exercise its discretion to delegate responsibility to its Regional Directors to make appropriate unit determinations. Such a delegation would be premature because of the absence of established case law under the Statute with respect to appropriate units and related issues." *Id.* at 3483.

6.    Under both the 1979 interim rules and the 1980 final rules, Regional Directors had delegated authority to investigate representation petitions, approve agreements for consent elections, and issue notices of hearings. Once hearings concluded, "the case [was] transferred automatically to the Authority," where "[t]he Authority [would] issue a decision determining the appropriate unit, directing an election or dismissing the petition[.]" *Id.* at 3504 (§§ 2422.15, 2422.16).

7.    In June 1983, the FLRA engaged in notice-and-comment rule making. The FLRA published a proposed rule in the Federal Register that amended its representation regulations to "implement the delegation [of decisions determining the appropriate unit and directing an election or dismissing the petition] to the Regional Directors and provide for a review procedure by the

Authority of Decisions and Orders of Regional Directors in representation cases." 48 Fed. Reg. 28816, 28816 (June 23, 1983).

8.    The FLRA explained that it was delegating decision-making authority on representation cases to its Regional Directors "to provide for the expeditious processing and determination of representation matters." 48 Fed. Reg. 28814, 28814 (June 23, 1983).

9.    After notice-and-comment, the Authority issued a final rule on representation matters. 48 Fed. Reg. 40189 (Sep. 6, 1983). "All parties commenting supported the proposed amendments and the delegation to the Regional Directors." *Id.*

10.    The 1983 final rule applied to petitions filed "on or after October 1, 1983," the effective date of the rule. *Id.*

11.    Under the 1983 final rule, Regional Directors would issue a Decision and Order after the close of a hearing, which would become the decision of the Authority unless a party submitted a timely application for review to the Authority—which was available for limited grounds—and the Authority granted review. 48 Fed. Reg. 40189, 40192.

12.    This process was akin to the delegation of representation decision-making to regional directors by the National Labor Relations Board in 1961. When announcing that delegation, the Chairman of the Board stated the "delegation of decision making and other powers by the Board to its regional directors promises to be one of the most far-reaching steps the Board has ever taken with respect to its election cases" and "should provide a major speedup in NLRB case handling[.]" Ginsburg Decl. Ex. B at 2. In its 1961 Annual Report to Congress, the Board reported that in the first six months of the delegation, the average case-disposition time had fallen from an "average of 113 days" to an "average of 34 days." *Id.*

3

13.     The FLRA enacted its most recent major changes to its representation regulations in 1995 pursuant to notice-and-comment rule making. 60 Fed. Reg. 39878, 39878-88 (Aug. 4, 1995). It explained in its proposed rule that it had "established a Task Force" which "conducted focus groups to solicit and consider customers' views prior to proposing these revisions." *Id.* at 39878

14.     The 1995 proposed rule, which the FLRA explained "will streamline the regulations and make the rules more flexible in addressing the representational concerns of agencies, labor organizations, and individuals," retained the delegation of authority to Regional Directors. *Id.*

15.     The 1995 final rule likewise retained the previous delegation of authority to Regional Directors, and the FLRA's publication in the Federal Register did not reflect any comment objecting to the delegation or the associated provision for discretionary Authority appellate review. 60 Fed. Reg. 67288, 67288–91 (Dec. 29, 1995).

16.     The 1995 final rule explained that "the current definitions and regulations will continue to govern all representation cases currently pending before the Federal Labor Relations Authority and those for which representation petitions are filed before March 15, 1996," the effective date of the rule. *Id.* at 67288.

17.     The FLRA published its annual "Performance and Accountability Report" in December 2025. FLRA, *Performance and Accountability Report*, https:// www. flra. gov/system/files/webfm/FLRA%20Agency-wide/Public%20Affairs/PAR/FLRA%20FY 2025%20PAR.pdf (Clark Decl. Ex. A). This report shows that in 2023, 168 representation petitions were filed at the Office of General Counsel ("OGC") (which employs Regional Directors), that in 2024, 185 representation petitions were filed at OGC, and that in 2025, 277 representation petitions were filed at OGC. *Id.* at 19. It also shows that in 2023, five representation cases were filed at the

Authority, that in 2024, three representation cases were filed at the Authority, and that in 2025, six representation cases were filed at the Authority. *Id.* at 17. It further shows that in 2023, five representation cases were closed at the Authority, that in 2024, two representation cases were closed at the Authority, and that in 2025, five representation cases were closed at the Authority.

18.    This Report shows that in 2024 and 2025, the Authority had not met its performance measure, discontinued in 2026, for the "average age of representation cases pending before the Authority." *Id.* at 25. This Report also shows that in 2025, the Authority had not met its performance measure, discontinued in 2026, for the "average age of representation cases decided or otherwise resolved by the Authority." *Id.*

19.    This Report shows that in 2025, the OGC met its 120 and 365-day performance measures for "percentage of representation cases resolved by the OGC through withdrawal, election, or issuance of a Decision and Order within [120/365] days of the filing of a petition." *Id.* at 19.

20.    On March 24, 2026, the FLRA engaged in rule making, announcing an "interim final rule," over the dissent of Member Anne Wagner, that revoked Regional Directors' longstanding authorities over all representation petitions effective April 23, 2026. 91 Fed. Reg. 13933 (Mar. 24, 2026).

21.    The FLRA did not provide an opportunity for the public to comment on this interim final rule before its publication.

22.    To implement the revocation of Regional Directors' longstanding authorities, the Authority also amended its "Memorandum Describing the Authority and Assigned Responsibilities of the General Counsel of the Federal Labor Relations Authority" to delete the current delegation of Regional Director authority to process and determine representation matters

and replace it with a delegation that takes effect only when the Authority lacks a quorum. 91 Fed. Reg. 13949, 13950 (Mar. 24, 2026) ("Memorandum Amendment"). After noting that past regulation changes had associated changes to the delegation memorandum, the Authority stated that it was amending its delegation memorandum "[f]or the reasons further explained in the interim final rule amending the FLRA's regulations." *Id.*

23.     On April 16, 2026, Defendant informed Plaintiffs on a Local Rule 7.1 conference call that the administrative record in this matter consists solely of the documents published in the Federal Register at 91 Fed. Reg. 13933, 13933–49 (Mar. 24, 2026) and 91 Fed. Reg. 13949, 13949–52 (Mar. 24, 2026).

24.     The administrative record does not contain evidence of the Federal Labor Relations Authority considering any of the following: (a) that "expeditious processing" was the initial reason for the delegation of authority to Regional Directors; (b) that a very small percentage of representation cases currently are reviewed by the Authority; (c) that the 1983 delegation was working as intended in expediting the vast majority of cases that are not appealed; (d) the NLRB's experience with its delegation to regional directors; (e) that there is value in review by a separate decisionmaker and that, given 5 U.S.C. § 7123's limitations on judicial review of certain types of FLRA orders, certain decisions now subject to administrative review by the FLRA may soon be insulated from any appellate review; (f) whether or how often parties who had appealed FLRA Regional Director decisions to the FLRA were submitting duplicative briefs or were instead winnowing down their arguments for appeal; (g) whether, more broadly, briefing to a trial court and appellate body may differ; and (h) that the Authority had already fallen short of meeting its own standards for representation case processing in recent years and whether increased case load would lead to further delay.

**Facts Relating to Plaintiffs' Standing**

25.     Plaintiffs are labor organizations and a federation of labor organizations, including Plaintiff NAGE, which is headquartered in Quincy, MA. Sutton Decl. ¶ 2. Plaintiffs, including by and through their affiliates, collectively represent hundreds of thousands of federal employees at agencies across the government. Biggs Decl. ¶ 3; Clarke Decl. ¶ 2; Ginsburg Decl. ¶ 4; Piacsek Decl. ¶ 2; Ronneberg Decl. ¶ 4; Sutton Decl. ¶ 3; Ury Decl. ¶ 4; Wane Decl. ¶ 2.

26.     As part of their representation of federal employees and to obtain exclusive representative status, Plaintiffs and/or their affiliates participate in representation proceedings under the FSLMRS. Biggs Decl. ¶ 8; Clarke Decl. ¶¶ 4–5; Ginsburg Decl. ¶ 5; Piacsek Decl. ¶ 5; Ronneberg Decl. ¶ 13; Sutton Decl. ¶ 10; Ury Decl. ¶¶ 9–10; Wane Decl. ¶ 8.

27.     Plaintiffs rely on first being elected as an exclusive representative in order to exercise certain core functions such as negotiating collective bargaining agreements with agencies and enforcing those agreements and bargaining unit employees' statutory rights. Biggs Decl. ¶ 6; Clarke Decl. ¶ 7; Ginsburg Decl. ¶ 5; Piacsek Decl. ¶ 3; Ronneberg Decl. ¶ 8; Sutton Decl. ¶ 9; Ury Decl. ¶ 7; Wane Decl. ¶ 6.

28.     Plaintiffs also represent their members by advocating on their behalf through the notice-and-comment process. Biggs Decl. ¶ 7; Clarke Decl. ¶ 8; Ginsburg Decl. ¶ 11; Piacsek Decl. ¶ 20; Ronneberg Decl. ¶ 12; Sutton Decl. ¶ 7; Ury Decl. ¶ 8; Wane Decl. ¶ 7. Indeed, after the Interim Final Rule was published, Plaintiffs submitted comments opposing the rule and seeking that it be withdrawn, or its effective date postponed. Clarke Decl. ¶ 35.

29.     Plaintiffs AFGE, NFFE, AFSCME, IFPTE, and NAGE and/or their affiliates have pending representation matters in several regional offices that would be affected by the Interim

7

Final Rule, including election petitions, unit clarification petitions, and decertification petitions. Biggs Decl. ¶ 9; Clarke Decl. ¶ 27; Piacsek Decl. ¶ 8; Ronneberg Decl. ¶ 13; Sutton Decl. ¶ 11.

30.     For example, Plaintiff AFGE has at least 30 pending representation matters in which it is a party, including a pending petition to obtain exclusive representation status for a bargaining unit at the U.S. Fish and Wildlife Service that includes employees in Massachusetts; while an election has been directed, no election agreement has been reached, and an election date has not been set as of April 17, 2026. Clark Decl. ¶¶ 27–28.

31.     Plaintiff NFFE has at least 10 pending representation matters in which it is a party. Piacsek Decl. ¶ 8.

32.     Many Plaintiffs are also engaged in organizing federal employees that they expect will result in the filing of election petitions after the scheduled effective date of the Interim Final Rule. Biggs Decl. ¶ 10; Clarke Decl. ¶ 29; Ginsburg Decl. ¶ 5; Piacsek Decl. ¶¶ 9–10; Sutton Decl. ¶ 10.

33.     Timely processing of election petitions is crucial because delays in deciding representation matters impede Plaintiffs from obtaining exclusive representation status and negotiating collective bargaining agreements for their bargaining unit employees and members, giving Plaintiffs and their affiliates materially less time to perform core services for their members, and giving members and bargaining unit employees materially less time in which they are protected by statutory rights. Biggs Decl. ¶ 13; Clarke Decl. ¶ 32; Ginsburg Decl. ¶ 10; Piacsek Decl. ¶ 13; Sutton Decl. ¶ 18.

34.     Delays can also lead to losses in momentum that can harm organizing efforts. Biggs Decl. ¶ 13; Clarke Decl. ¶ 32; Ginsburg Decl. ¶ 9; Piacsek Decl. ¶ 13; Sutton Decl. ¶ 18.

35.    Agencies across the government, including the Department of Education, Department of Agriculture, Department of the Interior, and Federal Aviation Administration, have announced planned reorganizations that are expected to lead to additional representation matters affecting Plaintiffs and their members. Clarke Decl. ¶ 30; Piacsek Decl. ¶¶ 14–15, Ex. A, Ex. B; Ronneberg Decl. ¶¶ 14, 21, Ex. A, Ex. B.

36.    For example, the USDA's Forest Service announced a "sweeping restructuring" in which it plans to relocate numerous positions. Piacsek Decl. ¶¶ 15, Ex. B.

37.    Many Plaintiffs and/or their affiliates represent members and bargaining unit members at these agencies; for example, AFGE represents employees at the Department of Education, Department of the Interior, and Department of Agriculture; NFFE represents employees at the Forest Service and Department of Interior; and AFSCME represents employees at the USDA and FAA. Clarke Decl. ¶ 30; Piacsek Decl. ¶¶ 14–15, Ex. A, Ex. B; Ronneberg Decl. ¶¶ 14, 21, Ex. A, Ex. B.

38.    Such reorganizations often lead to representation proceedings involving multiple labor organizations and complex questions of law and fact. Efficiently resolving these petitions is important so Plaintiffs can be effective workplace advocates and their members have clarity as to who their exclusive representative will be. Clarke Decl. ¶ 32; Ronneberg Decl. ¶ 16; Piacsek Decl. ¶ 16.

39.    For example, the Department of Interior has recently created the U.S. Wildland Fire Service, which realigned wildland firefighters and support staff from a variety of agencies. Piacsek Decl. Ex. A. This realignment affects employees in thirty-two bargaining units, including employees represented by Plaintiff NFFE. Piacsek Decl. ¶ 14. The Department of Interior recently

filed a unit clarification petition seeking to clarify the status of bargaining unit employees at that agency. *Id.*

40.     Plaintiffs rely on the expertise and professionalism of Regional Directors during representation proceedings who are empowered to reach agreements with the parties that avoid the need for hearings and/or prolonged litigation to secure efficient, trusted representation decisions. Clarke Decl. ¶ 13; Piacsek Decl. ¶¶ 17–19; Ronneberg Decl. ¶¶ 17–18; Sutton Decl. ¶¶ 12–15; Ury Decl. ¶ 12; Wane Decl. ¶ 12.

41.     The Interim Final Rule, when there is a quorum at the Authority, eliminates Plaintiffs' existing right to first obtain a decision from a Regional Director and then seek review of that decision from a second decisionmaker. The current multi-tier process reduces the likelihood of error and provides an outlet for additional review when Plaintiffs believe critical errors of law or fact were made. Biggs Decl. ¶ 14; Ronneberg Decl. ¶ 20; Sutton Decl. ¶ 19; Ury Decl. ¶ 13; Wane Decl. ¶ 13.

Dated: April 20, 2026

Respectfully submitted,

Alfred Gordon O'Connell, BBO # 630456
Jillian M. Bertrand, BBO # 682214
**Pyle Rome Ehrenberg PC**
2 Liberty Square, 10th Floor
Boston, MA 02109
Tel: (617) 367-7200
Fax: (617) 367-7200
agordon@pylerome.com
jbertrand@pylerome.com

Leon Dayan*
Lane Shadgett*
J. Alexander Rowell*
**Bredhoff & Kaiser, PLLC**
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Tel: (202) 842-2600

Fax: (202) 842-1888
ldayan@bredhoff.com
lshadgett@bredhoff.com
arowell@bredhoff.com

*Attorneys for Plaintiffs*
*\*Pro hac vice motion pending*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 20, 2026, the above document was filed through the Electronic Case Filing System for filing and thus accomplished electronic service to the registered participants as identified on the Notice of Electronic Filing.

_____
Alfred Gordon O'Connell

11