## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, ET AL., | ) ) ) ) ) | |
| v. | ) ) | Civil Action Number: 1:26-cv-11747-DJC |
| U.S. FEDERAL LABOR RELATIONS AUTHORITY, | ) ) ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

THOMAS TSO
Solicitor

REBECCA J. OSBORNE
Deputy Solicitor

ADAM M. JOHNSON
Attorney

ELIZABETH R. WISEMAN
Attorney

Federal Labor Relations Authority
1400 K Street NW
Washington, D.C. 20424
771-444-5779
ttso@flra.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................ 3

      A.      The Statute's Plain Text ........................................................................................ 3

      B.      Constitutional and Legislative Context ................................................................ 5

STANDARD OF REVIEW ........................................................................................................ 7

ARGUMENT ............................................................................................................................. 9

I.      THE IFR COMPORTS WITH APA STANDARDS FOR PROCEDURAL RULES ........ 9

      A.      The Delegation Memorandum and IFR are Authority decisions concerning the delegation of its own power, which are inherently procedural in nature. ............... 9

      B.      The Delegation Memorandum and IFR do not alter party rights. ........................ 10

      C.      The FLRA was not required to engage in notice-and-comment rulemaking simply because it exercised its discretion to do so decades ago. .......................... 16

      D.      Although not required to do so, the FLRA complied with APA notice-and-comment requirements .......................................................................................... 18

II.     THE IFR IS NOT ARBITRARY OR CAPRICIOUS ...................................................... 20

      A.      This Court should defer to the Authority's Delegation Memorandum and IFR, which relate solely to a delegation of power and the procedures necessary to implement it. .......................................................................................................... 21

      B.      Neither the substance, nor the effective date, of the IFR is arbitrary or capricious .............................................................................................................. 24

            1.      The IFR is reasonable and reasonably explained. ..................................... 24

            2.      The IFR's effective date is not arbitrary or capricious. ............................ 26

            3.      Plaintiffs' alleged harms are noncognizable or speculative. ..................... 28

CONCLUSION ........................................................................................................................ 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1621 Route 22 W. Operating Co., LLC v. NLRB,*
　725 F. App'x 129 (3d Cir. 2018).............................................................................. 30

*AFL-CIO v Chao,*
　297 F. Supp. 2d 155 (D.D.C. 2003)......................................................................26-28

*AFL-CIO. v. NLRB,*
　57 F.4th 1023 (D.C. Cir. 2023)......................................................................14-16, 26

*Am. Hosp. Ass'n v. Bowen,*
　834 F.2d 1037 (D.C. Cir. 1987)................................................................................ 9

*Associated Builders & Contractors of Tex., Inc. v. NLRB,*
　826 F.3d 215 (5th Cir. 2016) .............................................................................. 22, 23

*Associated Fisheries of Me., Inc. v. Daley,*
　127 F.3d 104 (1st Cir. 1997)..................................................................................... 8

*Ass'n of Civilian Technicians, Inc. v. FLRA,*
　283 F.3d 339 (D.C. Cir. 2002)................................................................................. 8

*Bachow Commc'ns, Inc. v. FCC,*
　237 F.3d 683 (D.C. Cir. 2001)................................................................................ 12

*Batterton v. Marshall,*
　648 F.2d 694 (D.C. Cir. 1980)................................................................................ 13

*Beth Israel Hosp. & Geriatric Ctr. v. NLRB,*
　688 F.2d 697 (10th Cir. 1982) ................................................................................ 23

*Bd. of Water, Light & Sinking Fund Comm'rs of City of Dalton, Ga. v. FERC,*
　294 F.3d 1317 (11th Cir. 2002) .............................................................................. 29

*Bos. Redevelopment Auth. v. Nat'l Park Serv.,*
　838 F.3d 42 (1st Cir. 2016)....................................................................................... 8

*Bowen v. Geo. Univ. Hosp.,*
　488 U.S. 204 (1988) ............................................................................................... 30

*Burdue v. FAA,*
　774 F.3d 1076 (6th Cir. 2014) ................................................................................ 24

*Bureau of Alcohol, Tobacco and Firearms v. FLRA*,
464 U.S. 89 (1983) ............................................................................................. 3

*Castellini v. Lappin*,
365 F. Supp. 2d 197 (D. Mass. 2005) ............................................................... 18

*Conn. Light & Power Co. v. Nuclear Regul. Comm'n*,
673 F.2d 525 (D.C. Cir. 1982) ......................................................................... 20

*Conyers v. Rossides*,
558 F.3d 137 (2d Cir. 2009) ............................................................................. 23

*Craker v. Drug Enf't Agency*,
714 F.3d 17 (1st Cir. 2013) ................................................................................ 9

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Mar. Admin.*,
215 F.3d 37 (D.C. Cir. 2000) ........................................................................... 21

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ......................................................................................... 24

*FTC v. Seven & I Holdings, Co.*,
780 F. Supp. 3d 17 (D.D.C. 2025) ................................................................... 28

*Field v. Napolitano*,
663 F.3d 505 (1st Cir. 2011) ............................................................................ 23

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ........................................................................................... 5

*GPA Midstream Ass'n v. U.S. Dep't of Transp.*,
67 F.4th 1188 (D.C. Cir. 2023) ....................................................................... 21

*Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*,
589 F.2d 658 (D.C. Cir. 1978) .................................................................... 13, 14

*In re Bel Air Chateau Hosp., Inc.*,
611 F.2d 1248 (9th Cir. 1979) ........................................................................... 5

*In re Chestek PLLC*,
92 F.4th 1105 (Fed. Cir. 2024) ........................................................................ 11

*Int'l Junior Coll. Of Bus. & Tech., Inc. v. Duncan*,
802 F.3d 99 (1st Cir. 2015) ............................................................................ 7, 8

*James V. Hurson Assocs., Inc. v. Glickman*,
229 F.3d 277 (D.C. Cir. 2000) ................................................................11-13, 17

iv

*Jones Lang LaSalle Ams., Inc. v. NLRB*,
  128 F.4th 1288 (D.C. Cir. 2025)..................................................................................... 22

*Kingdomware Techs., Inc. v. United States*,
  579 U.S. 162 (2016) ....................................................................................................... 22

*Kinuthia v. Biden*,
  702 F. Supp. 3d 5 (D. Mass. 2023)................................................................................... 8

*La Casa Del Convaleciente v. Sullivan*,
  965 F.2d 1175 (1st Cir. 1992)........................................................................................ 11

*Landgraf v. USI Film Prods*,
  511 U.S. 244 (1994) ....................................................................................................... 30

*Levesque v. Block*,
  723 F.2d 175 (1st Cir. 1983)..................................................................................... 18, 19

*Little Sisters of the Poor Saints Peter & Paul Home v. Pa.*,
  591 U.S. 657 (2020) ...................................................................................................17-19

*L.M.-M. v. Cuccinelli,*
  442 F. Supp. 3d 1 (D.D.C. Mar. 1, 2020) ....................................................................... 9

*Lonsdale v. United States*,
  919 F.2d 1440 (10th Cir. 1990) ....................................................................................... 9

*Manufactured Hous. Inst. v. EPA*,
  467 F.3d 391 (4th Cir. 2006) ......................................................................................... 18

*Md. Air Nat'l Guard*,
  73 FLRA 905 (2024) ...................................................................................................... 14

*Minuteman Health, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  291 F. Supp. 3d 174 (D. Mass. 2018)........................................................................... 7, 8

*Mosey Mfg. Co., Inc. v. NLRB*,
  701 F.2d 610 (7th Cir. 1983) ......................................................................................... 23

*N. Am. Van Lines, Inv. v. Interstate Com. Comm'n*,
  666 F.2d 1087 (7th Cir. 1981) ................................................................................... 20, 26

*N.H. Hosp. Ass'n v. Azar*,
  887 F.3d 62 (1st Cir. 2018)................................................................................... 11, 13, 17

*N.S. v. Hughes*,
  No. 1:20-CV-101-RCL, 2020 WL 4260739 (D.D.C. Jul. 24, 2020)...................................... 10

v

*Nat'l Ass'n of Home Health Agencies v. Schweiker*,
690 F.2d 932 (D.C. Cir. 1982)......................................................................... 12, 13

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007) ........................................................................................ 19

*Nat'l Ass'n of Indep. Television Producers & Distribs. v. FCC*,
502 F.2d 249 (2d Cir. 1974) .........................................................................26-28

*Neighborhood TV Co. v. F.C.C.*,
742 F.2d 629 (D.C. Cir. 1984)......................................................................... 12

*Nightingale Oil Co. v. NLRB*,
905 F.2d 528 (1st Cir. 1990).......................................................................... 22

*NLRB v. A.J. Tower Co.*,
329 U.S. 324 (1946) ....................................................................................... 22

*NLRB v. Duval Jewelry Co.*,
357 U.S. 1 (1957) ............................................................................................ 7

*NLRB v. Magnesium Casting Co.*,
427 F.2d 114 (1st Cir. 1970).......................................................................... 6

*NLRB v. Waterman S.S. Corp.*,
309 U.S. 206 (1940) ....................................................................................... 23

*Pension Ben. Guar. Corp. v. LTV Corp.*,
496 U.S. 633 (1990) ....................................................................................... 22

*Perez v. Mortgage Bankers Association.*
575 U.S. 92 (2015)........................................................................................18-19

*Phillips Petroleum Co. v. U.S. EPA*,
803 F.2d 545 (10th Cir. 1986) ................................................................ 19, 26, 28

*Protect Democracy Project, Inc. v. U.S. Dep't of Just.*,
No. CV 18-10874-FDS, 2023 WL 4471809 (D. Mass. Jul. 11, 2023)..................... 23

*RSM, Inc. v. Buckles*,
254 F.3d 61 (4th Cir. 2001) ............................................................................. 9

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*,
664 F. Supp. 3d 143 (D.D.C. 2023)................................................................... 7

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*,
605 U.S. 168 (2025) ....................................................................................... 24

*Sig Sauer, Inc. v. Brandon*,
  826 F.3d 598 (1st Cir. 2016)..................................................................................... 8

*Sistema Universitario Ana G. Mendez v. Riley*,
  234 F.3d 772 (1st Cir. 2000)..................................................................................... 8

*Stauffer v. Internal Revenue Serv.*,
  285 F. Supp. 3d 474 (D. Mass. 2017)..................................................................... 11

*U.S. Dep't of the Interior Nat'l Park Serv. Blue Ridge Parkway, N.C.*,
  73 FLRA 526 (2023) .............................................................................................. 14

*U.S. Dep't of Veterans Affs. Kansas City Veterans Affs. Med. Ctr., Kansas City, Mo.*,
  70 FLRA 465 (2018) .............................................................................................. 14

*U.S. Env't Prot. Agency Off. of Rsch. & Dev. Ctr. for Env't Measuring & Modeling Gulf Ecosystem Measurement & Modeling Div. Gulf Breeze, Fla.*,
  71 FLRA 1199 (2020) ............................................................................................ 14

*United States v. Am. Prod. Indus., Inc.*,
  58 F.3d 404 (9th Cir. 1995)....................................................................................... 9

*United States v. Arthrex, Inc.*,
  594 U.S. 1 (2021) ..................................................................................................... 5

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*,
  728 F. Supp. 2d 1077 (N.D. Cal. 2010).................................................................. 10

*United States v. McCall*,
  727 F. Supp. 1252 (N.D. Ind. 1990)....................................................................... 10

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950) ............................................................................................... 28

*United States v. Rodgers*,
  461 U.S. 677 (1983) ............................................................................................... 22

*United States v. Saunders*,
  951 F.2d 1065 (9th Cir. 1991).................................................................................. 9

*Univ. of Chi. Med. Ctr. v. Kennedy,*
   No. 24-5188, 2025 WL 3183158 (D.C. Cir. Nov. 14, 2025).................................. 21

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
  435 U.S. 519 (1978) .......................................................................................*Passim*

*Wille v. Lutnic*k,
  158 F.4th 539 (4th Cir. 2025)................................................................................. 30

*Withrow v. Larkin*,
  421 U.S. 35 (1975) ........................................................................................ 30

**Constitution and Statutes**

U.S. Const. art. II, § 2, cl. 2 ........................................................................... 5

5 U.S.C. § 553 ......................................................................................*Passim*

5 U.S.C. § 554(a)(6) ........................................................................................ 5

5 U.S.C. § 7104(a), (b) .................................................................................... 3

5 U.S.C. § 7105 ....................................................................................*Passim*

5 U.S.C. § 7112 ................................................................................... 3, 11, 21

5 U.S.C. § 7114 ............................................................................................... 3

5 U.S.C. § 7116 ............................................................................................... 3

29 U.S.C. §§ 151-187 ..................................................................................... 3

**Rules of Civil Procedure**

Fed. R. Civ. P. 56(a) ..................................................................................... 12

Local Rule 56.1 .............................................................................................. 21

**Regulations and Federal Register Notices**

5 C.F.R. § 2422.31 ........................................................................................ 14

5 C.F.R. § 2429.17 ........................................................................................ 17

5 C.F.R. § 2429.28 ........................................................................................ 29

44 Fed. Reg. 44777 (Jul. 30, 1979) .............................................................. 16

45 Fed. Reg. 3522 (Jan. 17, 1980) ............................................................... 16

48 Fed. Reg. 28816 (Jun. 23, 1983) ............................................................. 16

60 Fed. Reg. 39878 (Aug. 4, 1995) .............................................................. 17

60 Fed. Reg. 67288 (Dec. 29, 1995) ............................................................ 17

91 Fed. Reg. 13949 (Mar. 24, 2026)........................................................................................*Passim*

91 Fed. Reg. 13933 (Mar. 24, 2026)........................................................................................*Passim*

**Other Authorities**

Brief of the AFL-CIO as Amicus Curiae in Support of Affirmance of Judgment Below, *Lucia v. Secs. and Exch. Comm'n*,
2018 WL 1638092 (U.S. 2018) ................................................................................................ 5

## PRELIMINARY STATEMENT

On March 24, 2026, Defendant Federal Labor Relations Authority ("FLRA," "Authority" or "Defendant") exercised its statutory right to revisit its delegation to its regional directors of responsibilities for determining whether employees are in appropriate units and whether a labor organization exclusively represents them (collectively known as "representation matters"). The FLRA's Delegation Memorandum (the "Delegation Memorandum" or "Del. Mem.")[1] and accompanying Interim Final Rule ("IFR")[2] did not change the rights of parties in representation matters. They did not change the parties' responsibilities in representation matters, the standards applied to those cases, or with whom the parties will file cases. They did not change the actors involved in making representation decisions or the FLRA's obligations to parties. All the FLRA changed was the internal procedure by which it decides representation matters. It replaced bifurcated decision making (an initial regional director determination, possibly followed by the Authority's discretionary review), with a single, collaborative decision-making process involving the Authority and its agents (the regional directors). In revisiting its delegation, the Authority lawfully exercised its powers and the discretion Congress explicitly gave to the Authority in its organic statute, the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-35 (the "FSLMRS" or "Statute").

Defendant opposes Plaintiffs' motion for summary judgment and cross-moves for summary judgment on all three counts of the Complaint. As Plaintiffs currently seek only to

---

[1] *Amendment to Memorandum Describing the Authority and Assigned Responsibilities of the General Counsel of the Federal Labor Relations Authority*, 91 Fed. Reg. 13949 (Mar. 24, 2026).

[2] *Meaning of Terms as Used in This Subchapter; Representation Proceedings; National Consultation Rights and Consultation Rights on Government-wide Rules or Regulations; Miscellaneous and General Requirements*, 91 Fed. Reg. 13933 (Mar. 24, 2026).

vacate the Delegation Memorandum and IFR,[3] Defendant moves for summary judgment on all other relief for failure to provide any basis to support an injunction, stay, or other relief. *See* Compl. §§ B, C, E. Plaintiffs' Brief makes clear that they are challenging "*only* the revocation of the Authority's existing delegation to regional directors governing representation matters and its associated review provision." Pl. Br. at 27 n.5 (emphasis added). Accordingly, Plaintiffs' Complaint and summary judgment motion focus solely on the FLRA's decision to have the Authority decide all representation matters in the first instance when it has a quorum, rather than delegate its functions to its agents, the regional directors. Plaintiffs do *not* challenge specific changes to the regulations. Summary judgment should therefore be granted in favor of the FLRA with respect to any claim not associated with the change to the delegation.

Summary judgment should also be granted in favor of the FLRA on Plaintiffs' main challenges to the Delegation Memorandum and IFR. In support of its motion for summary judgment, Plaintiffs allege that (1) the Memorandum and the IFR are arbitrary and capricious; (2) the effective date of the IFR is arbitrary and capricious; and (3) the failure of the FLRA to engage in notice-and-comment rulemaking violates the Administrative Procedure Act ("APA"). The APA, however, does not require notice-and-comment rulemaking when agencies make organizational and procedural changes like the ones at issue, much less when agencies change internal delegations of authority. Even assuming that notice-and-comment rulemaking was appropriate in this instance, the FLRA satisfied the APA's notice-and-comment requirements. Congress also committed these internal decisions to the FLRA's discretion. Finally, Plaintiffs' alleged harms—flowing from potential inefficiencies; reliance on the experience of regional

---

[3] Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Expedited Motion for Summary Judgment ("Plaintiffs' Brief" or "Pl. Br."), at 28.

directors; reliance on the current application for review process; and maintenance of status quo—are speculative and based on erroneous assumptions.

## **BACKGROUND**

### A.      The Statute's Plain Text

The FLRA is an executive-branch Federal agency created by the FSLMRS. The FSLMRS provides a general framework for regulating labor-management relations for the Federal government. *See generally* 5 U.S.C. §§ 7101-7135. It grants Federal employees the right to organize and provides for collective bargaining. *See* 5 U.S.C. §§ 7114(a)(1), 7116.

The Authority component of the FLRA is the head of the agency. *See* Section B. The Authority is composed of three members appointed by the President and confirmed by the Senate, "not more than 2 of whom may be adherents of the same political party." 5 U.S.C. § 7104(a), (b). The Authority's role is analogous to the National Labor Relations Board ("NLRB" or "Board") in the private sector. *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 92-93 (1983). The Statute is modeled in part after the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-187. *Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 342 (D.C. Cir. 2002) ("the FLRA parallels the NLRA").

Congress, in the Statute's plain language, gave the Authority the responsibility for resolving representation matters. Congress provided that the Authority "shall . . . determine the appropriateness of units for labor organization representation under section 7112[.]" 5 U.S.C. § 7105(a)(2)(A); *see also id.* § 7112. Section 7111 gives the Authority the responsibility for determining matters related to the selection of exclusive representatives of appropriate units. *See id.* § 7111(b) ("the Authority shall investigate . . . petition[s concerning exclusive representation], and . . . provide opportunity for a hearing[,]" "[t]he Authority shall supervise or

conduct an election"), (d) ("[t]he Authority shall determine who is eligible to vote in any election"), (e) ("[a] labor organization . . . shall submit to the Authority . . . a roster of its officers and representatives"), (f) ("[e]xclusive recognition shall not be accorded to a labor organization— (1) if the Authority determines the labor organization is subject to corrupt influences"). Congress barred judicial review of these "final order[s] of the Authority" related to appropriate units. *Id.* § 7123(a)(2).

Although Congress vested the Authority with responsibility for resolving representation matters, Congress gave the Authority the discretion to delegate its authority to decide these matters to the FLRA's regional directors. The FLRA's regional directors are appointed by the Authority "as it *may* from time to time find necessary for the proper performance of its functions." *Id.* § 7105(d), (e) (emphasis added).[4] Congress provided that the Authority "*may* delegate to any regional director its authority under this chapter— (A) to determine whether a group of employees is an appropriate unit; (B) to conduct investigations and to provide for hearings; (C) to determine whether a question of representation exists and to direct an election; and (D) to supervise or conduct secret ballot elections and certify the results thereof." *Id.* § 7105(e)(1) (emphasis added). And "*[i]f* the Authority delegates any authority to any regional director . . . to take any action pursuant to subsection (e)," *then* a review procedure subject to the Authority's discretion is provided. *Id.* § 7105(f) (emphasis added). The Authority may exercise plenary review over regional directors' decisions, which includes the ability to stay, "modify," or

---

[4] Congress further provided that the Authority "*may* delegate to officers and employees appointed under this subsection authority to perform such duties and make such expenditures *as may be necessary*." 5 U.S.C. § 7105(d) (emphasis added).

4

"reverse" them.[5] 5 U.S.C. § 7105(f). The term "regional director" is not referenced or defined elsewhere in the Statute.

### B.    Constitutional and Legislative Context

The wide discretion Congress committed to the Authority is reinforced by Appointments Clause jurisprudence and related case-law from the NLRA's analogous provisions.

First, as a Constitutional matter, the Authority is the head of the FLRA. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513 (2010). Plaintiffs argued to the Supreme Court that regional directors in the analogous NLRB context are "inferior officers" in *Lucia v. Securities and Exchange Commission*. *See* Brief of the AFL-CIO as Amicus Curiae in Support of Affirmance of Judgment Below*, Lucia v. Secs. and Exch. Comm'n*, 2018 WL 1638092, at *13 (U.S. 2018). There, Plaintiffs argued that NLRB regional directors, as "inferior officers," are subject to the Board's "statutory discretion," and those directors act on behalf of the Board. *Id.*

If the FLRA's regional directors are "inferior officers," then Congress vested the *Authority,* the "Head[ ] of Department[ ]," not the "Courts of Law," U.S. Const. art. II, § 2, cl. 2, with the powers of appointment, removal, supervision, and oversight over the finality of their decisions.[6] *See, e.g., Arthrex, Inc.,* 594 U.S. at 13 ("An inferior officer must be 'directed and

---

[5] To suggest otherwise, *see infra* Section B, would run counter to the Constitution. Whether the regional directors are employees or inferior officers, the Authority Members are the FLRA's "principal officers" and hold the *sole* power to issue final decisions on behalf of the FLRA. *See United States v. Arthrex, Inc.*, 594 U.S. 1, 23 (2021) ("Only an officer properly appointed to a principal office may issue a final decision binding the Executive Branch in the proceeding before us."). Regional directors are not "independent decisionmakers," Compl. ¶ 61.

[6] The FSLMRS does not define who may be appointed as "regional directors." Consequently, regional directors may be political or career appointees. Nor are representation proceedings themselves subject to the APA, 5 U.S.C. § 554(a)(6); *In re Bel Air Chateau Hosp., Inc.*, 611 F.2d

supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.'") (citation omitted). If the Authority can remove regional directors from their roles altogether, as a matter of Constitutional supervision, then the revocation of the delegated authority to perform a discrete subset of duties clearly falls within that Constitutional power. Plaintiffs have not cited any restriction to the contrary.

Second, this Circuit's decision in *NLRB v. Magnesium Casting Co.*, 427 F.2d 114, 120 (1st Cir. 1970), *aff'd*, 401 U.S. 137 (1971), discusses some of the potential motivations behind the statutory delegation provision in the NLRA, which can be applied by analogy to the FLRA. The First Circuit concluded that, based on legislative history and consistent with the Constitution, the NLRB's regional directors are "'required to follow the lawful rules, regulations, procedures, and precedents of the Board and to act in all respects as the Board itself would act.' As one safeguard against possible abuse of the delegated power, the Board was assured the right of continuous supervision over its delegates, so that the Board could 'refuse to delegate authority to handle all or any part of the proceedings in contested representation cases.'" *Id.* at 120 (quoting 2 NLRB Legislative History of the Labor-Management and Disclosure Act of 1959 ("NLRB Legislative History"), 1856(2) (1959) (Remarks of Senator Goldwater)). Thus, this Circuit noted, the "delegation of authority to the regional directors suggests to us a Congressional judgment that the regional directors have an expertise concerning unit

---

1248, 1253 (9th Cir. 1979). Other matters under the FLRA's jurisdiction, such as unfair labor practices, are subject to APA requirements "to the extent practicable." 5 U.S.C. § 7105(a)(6). But Congress intentionally avoided requiring Administrative Law Judges ("ALJs") to decide these representation matters. 5 U.S.C. § 7105(e). Contrary to Plaintiffs' assertions, there are no statutory restrictions on the relationship between regional directors and the Authority the way there would be in an ALJ proceeding, which anticipates the independence of ALJs. *Cf.* Pl. Br. at 18 (arguing that the regional director cannot be "deliberative" by working with the Authority); *id.* at 20-21(arguing that the Authority must justify itself in reversing a regional director's decision).

determinations *sufficiently comparable* to the Board's expertise that such determinations may be left primarily to the regional directors, subject to the Board's discretionary review." *Id.* (emphasis added). It emphasized that "Congress . . . buil[t] in a second safeguard against possible abuse by the regional directors of the delegated powers. In both the representation proceeding and the unfair labor practice proceeding, the 'ultimate decision' remains with the Board[.]" *Id.* (quoting *NLRB v. Duval Jewelry Co.*, 357 U.S. 1, 8 (1957)). As this Circuit noted in *Magnesium Casting,* the regional directors are simply the Board's "agent[s]." *Id.* (citation omitted). And the NLRA delegation left the Board in total control over the delegation as Congress was concerned about ensuring the Board's control to prevent the regional directors' possible abuse of their delegated powers. *Id.* This Court should draw similar conclusions with respect to the FLRA.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute of material fact and [that] the movant is entitled to judgment as a matter of law." *Minuteman Health, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 291 F. Supp. 3d 174, 189 (D. Mass. 2018) (alteration in original) (quoting Fed. R. Civ. P. 56(a)). However, in cases involving review of an agency action under the APA, the traditional Rule 56 standard does not apply due to the limited role of a court in reviewing the administrative record. *Id*. (citing *Int'l Junior Coll. Of Bus. & Tech., Inc. v. Duncan*, 802 F.3d 99, 106 (1st Cir. 2015)); *see also Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 664 F. Supp. 3d 143, 148 (D.D.C. 2023)*.* Where an administrative action is challenged under the APA, "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Minuteman*

*Health, Inc.*, 291 F. Supp. 3d at 189-90 (internal citation omitted).

In such cases, "judicial review, even at the summary judgment stage, is narrow" because "'the APA standard affords great deference to agency decision making,' and 'the [agency's] action is presumed valid.'" *Duncan*, 802 F.3d at 106 (quoting *Associated Fisheries of Me., Inc. v. Daley*, 127 F.3d 104,109 (1st Cir. 1997)). The APA "provides that a reviewing court should 'hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *Minuteman Health, Inc.*, 291 F. Supp. 3d at 190 (quoting 5 U.S.C. § 706). An agency action is arbitrary and capricious when the agency "relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise." *Kinuthia v. Biden*, 702 F. Supp. 3d 5, 10 (D. Mass. 2023) (quoting *Bos. Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016)). The question is "whether the agency examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Duncan*, 802 F.3d at 106-07 (quoting *Sistema Universitario Ana G. Mendez v. Riley*, 234 F.3d 772, 777 (1st Cir. 2000)); *see also Daley*, 127 F.3d at 109 (the court's role "is only to determine whether the [agency head's] decision to promulgate the . . . regulation was consonant with his statutory powers, reasoned, and supported by substantial evidence in the record") (citations omitted). "This is a deferential standard. A court 'may not substitute [its] judgment for that of the agency, even if [it] disagree[s] with its conclusions.'" *Kinuthia*, 702 F. Supp. 3d at 10 (alterations in original) (quoting *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 601 (1st Cir. 2016); *Craker v. Drug*

*Enf't Agency*, 714 F.3d 17, 26 (1st Cir. 2013)).

## ARGUMENT

The FLRA was not required to engage in notice-and-comment rulemaking because the Delegation Memorandum and the IFR are procedural rules and did not affect the substantive rights of any party. Nevertheless, the FLRA fulfilled all of the requirements of notice-and-comment rulemaking. It provided a reasonable and reasonably explained justification, appropriate to a procedural rule. Any harms alleged by Plaintiffs are either noncognizable or speculative.

## I.    THE IFR COMPORTS WITH APA STANDARDS FOR PROCEDURAL RULES

### A.    The Delegation Memorandum and IFR are Authority decisions concerning the delegation of its own power, which are inherently procedural in nature.

The IFR is procedural because it simply implements the Authority's Delegation Memorandum. Delegations are "rules of agency organization, procedure, or practice," 5 U.S.C. § 553(b)(A) (so-called "procedural rules"), exempt from APA's notice-and-comment requirements. *See, e.g., RSM, Inc. v. Buckles*, 254 F.3d 61, 69 (4th Cir. 2001) ("[T]he delegation merely affected which [Bureau of Alcohol, Tobacco, and Firearms ("BATF")] agent would issue the letter. BATF need not engage in notice-and-comment-rulemaking each time it delegates authority within its own ranks."); *United States v. Am. Prod. Indus., Inc.*, 58 F.3d 404, 407 (9th Cir. 1995) (citations omitted); *United States v. Saunders*, 951 F.2d 1065, 1068 (9th Cir. 1991) (no requirement to publish in Federal Register agency orders that "simply effected a shifting of responsibilities wholly internal to the Treasury Department."); *Lonsdale v. United States*, 919 F.2d 1440, 1446 (10th Cir. 1990); *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987) ("we held that a directive specifying that requisite audits be performed by nonagency accountants was exempt as a procedural measure") (citation omitted); *L.M.-M. v. Cuccinelli*, 442

9

F. Supp. 3d 1, 33, n.12 (D.D.C. Mar. 1, 2020), judgment entered, No. CV 19-2676 (RDM), 2020 WL 1905063 (D.D.C. Apr. 16, 2020) ("A delegation of authority to perform defined agency duties may be exempt from the notice-and-comment process as a rule of 'agency organization.'") (citations omitted); *N.S. v. Hughes*, No. 1:20-CV-101-RCL, 2020 WL 4260739, at *4 (D.D.C. Jul. 24, 2020) (same); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1084-85 (N.D. Cal. 2010); *United States v. McCall*, 727 F. Supp. 1252, 1254 (N.D. Ind. 1990) ("The court finds the delegation orders at issue here to be such rules of internal agency procedure, obviating their publication in the Federal Register.").

Plaintiffs' construction of the FSLMRS and the APA to require delegations to undergo full notice-and-comment rulemaking is not only inconsistent with case-law but also Congress's repeated grants of discretion to the Authority to designate the agents it chooses to conduct its hearings and support its investigations and determinations. *See, e.g.*, 5 U.S.C. §§ 7105(c) (granting the Authority discretion to designate agents to "make any appropriate inquiry necessary to carry out its duties"), 7105(h) (granting the discretion to designate attorneys to represent the Authority in court), 7118(a)(2)(B) (granting the discretion to designate individuals to conduct hearings); 7118(a)(6) (same), 7118(a)(7) (granting the discretion to designate individuals to make unfair-labor-practice determinations), 7132(a) (granting the discretion to designate individuals to issue subpoenas, receive evidence, take depositions, and examine witnesses).

As the IFR merely implements the Delegation Memorandum, it is a procedural and not substantive rule and thus exempt from notice-and-comment requirements.

**B.    The Delegation Memorandum and IFR do not alter party rights**

Plaintiffs admit the rule is "nominally procedural." Pl. Br. at 2, 25. The IFR is procedural because it does not alter the rights of parties. As the D.C. Circuit concluded in a case cited by

10

Plaintiffs (Pl. Br. at 25): "the critical feature of a rule that satisfies the so-called procedural exception is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *James V. Hurson Assocs., Inc. v. Glickman ("Hurson")*, 229 F.3d 277, 280 (D.C. Cir. 2000) (internal quotation marks omitted).

In *Hurson,* "[t]he agency's abolition of face-to-face [meetings] did not alter the substantive criteria by which it would approve or deny proposed labels; it simply changed the procedures it would follow in applying those substantive standards." *Id*. at 281; *see also, e.g., In re Chestek PLLC*, 92 F.4th 1105, 1110 (Fed. Cir. 2024) (holding that the procedural versus substantive rule distinction turns on whether the rule affects the *substantive* standards versus the mode or procedure for presentation).

Consistent with this approach, this Circuit has "said that a legislative rule [as distinct from a procedural rule] is one that 'creates rights, assigns duties, or imposes obligations, the basic tenor of which is not already outlined in the law itself.'" *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018) (quoting *La Casa Del Convaleciente v. Sullivan*, 965 F.2d 1175, 1178 (1st Cir. 1992)). This Court described the test as:

> A procedural rule generally may not "encode . . . a substantive value judgment or put[ ] a stamp of approval or disapproval on a given type of behavior," but "the fact that the agency's decision was based on a value judgment about procedural efficiency does not convert the resulting rule into a substantive one." . . . "Rules are generally considered procedural so long as they do not 'change the substantive standards by which the [agency] evaluates' applications which seek a benefit that the agency has the power to provide."

*Stauffer v. Internal Revenue Serv.*, 285 F. Supp. 3d 474, 483 (D. Mass. 2017) (citations omitted).

In this case, the law already outlines what the IFR implements and nothing more: "The Authority shall determine the appropriateness of any unit." 5 U.S.C. § 7112(a). Plaintiffs fail to

11

identify any change in the substantive standards applied to representation matters or a substantive value judgment, because the IFR makes no such change. The Authority's primary concern in promulgating the Delegation Memorandum and IFR was, instead, a procedural concern: creating a "streamlined process" that benefited from "the collective insights and experience of the regional offices and the Authority." 91 Fed. Reg. at 13933, 13934. Further, the Authority sought to "provide parties in most cases with decisions *from the Authority* on all consequential issues in representation proceedings." *Id.* at 13933 (emphasis added). Plaintiffs may counterfactually speculate that these changes will not achieve efficiency gains, Pl. Br. at 26, or that the new procedures will suffer from a lack of expertise, *id.* at 17-19, but the FLRA's value judgment about procedural efficiency, and the best way to harness the talent of its workforce, does not transform the IFR into a substantive rule.

Plaintiffs' citation to *National Association of Home Health Agencies v. Schweiker,* 690 F.2d 932, 949 (D.C. Cir. 1982), Pl. Br. at 25, is inapposite for several reasons. First, *Home Health Agencies* relies on a test disavowed by the D.C. Circuit, namely the "substantial impact" test. *See Neighborhood TV Co. v. F.C.C.,* 742 F.2d 629, 637 (D.C. Cir. 1984) (describing *Home Health Agencies* as a "substantial impact" decision); *cf.* Pl. Br. at 26 (raising "significant delays" as the sole impact). The D.C. Circuit rejected the "substantial impact" test in *Hurson,* concluding "that an otherwise-procedural rule does not become a substantive one, for notice-and-comment purposes, simply because it imposes a burden on regulated parties." 229 F.3d at 281.[7] This logic

---

[7] Even as a matter of impact, the D.C. Circuit has noted that an agency decision barring all amendments to applications to an agency was a procedural rule. "The right to amend is no more substantive than the right to file an application in the first place, which we have previously held the [agency] may suspend without notice-and-comment." *Bachow Commc'ns, Inc. v. FCC*, 237 F.3d 683, 690 (D.C. Cir. 2001). "Like the rules governing the filing of applications, rules permitting (or suspending) amendments are 'rules of agency organization, procedure, or practice'

accords with First Circuit caselaw, which has recognized that the APA exempts "interpretive rules," found in the same statutory provision as procedural rules, from the notice-and-comment procedures, even if such rules "may have a substantial impact on regulated entities." *N.H. Hosp. Ass'n*, 887 F.3d at 70 (citing 5 U.S.C. § 553(b)(A)).

Moreover, factually, *Home Health Agencies* is easily distinguishable. As *Hurson* notes, *Home Health Agencies* involved a rule that "eliminated claimants' access to the HHS Secretary" and restricted the parties' ability to choose who had "decision[-]making authority." 229 F.3d at 282. Here, the rules do not alter a choice of "decision[-]making authority" because neither the FSLMRS nor the Authority has ever given parties a choice of alternative fora. The FSLMRS gives the Authority responsibility for representation determinations—and the Authority dictated how those determinations would be made in both the prior and now-effective regulations. Thus, the IFR, which did not make other substantive changes to the Authority's regulations, did not change the rights of parties to representation matters. *See Home Health Agencies*, 690 F.2d at 950 n.103 (distinguishing *Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp.*, 589 F.2d 658 (D.C. Cir. 1978) on those grounds). Indeed, *Home Health Agencies* acknowledged that when parties had no choice in an agency's decision-making authority and the agency merely delegated the authority from one agent to another, such a rule was procedural. *Id.* (distinguishing *Guardian*); *see also Batterton v. Marshall,* 648 F.2d 694, 708 n.74 (D.C. Cir. 1980) (noting that *Guardian* exempted from notice-and-comment the delegation of authority to the agency's regional districts because it did "not determine the standards by which those tasks will be conducted nor the criteria affecting private parties' interests.").

---

exempt from the [APA's] notice-and-comment requirement." *Id.* Barring amendments to applications appears more burdensome than any procedural rules here.

13

Here, clearly *Guardian*, not *Home Health Agencies*, applies as both the prior and existing regulations only guaranteed one FLRA decision and did not provide any choice in decisionmakers. The prior regulation never required the Authority's discretionary review. *See* Pl. Br. at 8 ("The Authority may . . .") (quoting former 5 C.F.R. § 2422.31(c)). The only situation in which the Authority might review Regional Director decisions was when (1) there was an absence of precedent; (2) law or policy warranted reconsideration, or (3) there was a genuine issue as to a failure to apply law or prejudicial error. *See id.* (citing former 5 C.F.R. § 2422.31(c)). Now, that second layer of discretionary review is unnecessary and parties will incur fewer or no delays as the Authority addresses those issues in the first instance.[8] Consistent with *Guardian*, the procedural rule here is merely a "necessary consequence" of the Authority's decisions regarding its own staff's (regional directors') responsibilities. *See AFL-CIO v. NLRB* ("*AFL-CIO v. NLRB*"), 57 F.4th 1023, 1042–43 (D.C. Cir. 2023) (citing *Guardian,* 589 F.2d at 665).

The D.C. Circuit's recent decision in *AFL-CIO v. NLRB* is also instructive here, as it examined both substantive and procedural changes to the NLRB's representation case processing regulations. *Id*. Out of five challenged provisions, three were found to be substantive, while two were procedural. *Id.* at 1035. One provision affected substantive interests when voter eligibility

---

[8] The Authority has overturned regional director decisions on the grounds set forth in 5 C.F.R. § 2422.31. *See, e.g., Md. Air Nat'l Guard*, 73 FLRA 905 (2024) (regional director failed to apply established law in finding firefighters fall within the express terms of the unit's certification); *U.S. Dep't of the Interior Nat'l Park Serv. Blue Ridge Parkway, N.C.,* 73 FLRA 526 (2023) (regional director erred in dismissing decertification petition as untimely); *U.S. Env't Prot. Agency Off. of Rsch. & Dev. Ctr. for Env't Measuring & Modeling Gulf Ecosystem Measurement & Modeling Div. Gulf Breeze, Fla.*, 71 FLRA 1199 (2020) (regional director erred in finding Title 42 ecological-toxicologist position covered by the FSLMRS); *U.S. Dep't of Veterans Affs. Kansas City Veterans Affs. Med. Ctr., Kansas City, Mo.*, 70 FLRA 465 (2018) (reversing precedent and overturning regional director decision that certain employees should be included in bargaining unit).

lists would be provided by the employer, which the court found "trenche[d] on the union's substantive interest in campaigning on equal footing with the employer." *Id.* Another provision delayed the certification of election results until a period of review had passed, which the court found "cut back on an employer's legal duty post-election to bargain in good faith during the pendency of a request for review or . . . until the time for seeking Board review has passed." *Id.* And another provision concerning who could serve as an election observer "establishe[d] new substantive criteria for selecting observers that directly affect[ed] regulated parties' interests in fair elections." *Id.*

Despite plaintiffs' concerns that the remaining two NLRB provisions—(1) a rule regarding pre-election litigation of voter eligibility, unit scope, and supervisory status, and (2) a provision adding a 20-day waiting period to hold an election after one is directed by the regional director—would affect substantive rights by delaying elections, the court found them to be procedural in nature, as they were "principally internal house-keeping rules," *AFL-CIO v. NLRB*, 57 F.4th at 1043 (internal quotations and citations omitted). As the court reasoned, these rules were both "primarily directed toward improving the efficient and effective operations of the agency," and they "impose[d] no new substantive obligations or burdens upon the parties' rights and interests." *Id.* (internal quotations and citations omitted). The court found that the pre-election litigation provision "principally affect[ed] the manner in which employers and unions present[ed] themselves and their views to the Board and [the manner] in which it decide[d] their disputes, rather than the parties' substantive rights or interests." *Id.* at 1045 (citations omitted). The election-delay provision "comprise[d] part of the timetable for [regulated entities] to assert[ ] substantive rights" and did not "alter any extant legal duty," distinguishing it from the certification-delay provision, which, by design, substantively altered parties' rights and

15

obligations. *Id.* at 1045-46 (internal quotation marks omitted).

As with the procedural rule changes in *AFL-CIO v. NLRB*, the IFR does not alter the "substantive rights and interests" of the parties. Rather, the IFR "principally affects the manner in which employers and unions present themselves and their views" to the Authority, and the manner in which the Authority "decides their disputes." *Id.* at 1045. Unlike the substantive rules in *AFL-CIO v. NLRB*, the IFR does not mandate a delay in triggering rights and responsibilities. Instead, the IFR will streamline internal operations and procedures, and offer parties decisions from the Authority Members on issues of consequence in representation matters.

### C.      The FLRA was not required to engage in notice-and-comment rulemaking simply because it exercised its discretion to do so decades ago.

Plaintiffs erroneously argue that a procedural rule must undergo formal notice-and-comment rulemaking if it revises a rule that previously underwent formal notice-and-comment rulemaking. However, as the court held in *AFL-CIO v. NLRB*, procedural and organizational rule changes—including changes to rules previously issued with notice-and-comment—do not require notice-and-comment rulemaking when they "impose no new substantive obligations or burdens upon the parties' rights and interests." 57 F.4th at 1043.

In each instance when the Authority has previously amended its representation delegations (as opposed to associated regulations that may include a range of changes), it has done so without notice-and-comment—indicating that changes flowing solely from the delegation are purely procedural.[9] The 1983 regulation amendments were themselves procedural

---

[9] *See Memorandum Describing the Authority and Assigned Responsibilities of the General Counsel of the Federal Labor Relations Authority*, initially issued without notice-and-comment in 1979, 44 Fed. Reg. 44777, 44777-78 (Jul. 30, 1979), and republished in 1980, 45 Fed. Reg. 3522, 3522-24 (Jan. 17, 1980); amended without notice-and-comment in the same Federal Register as the other 1983 regulations. 48 Fed. Reg. 28816, 28816-20 (Jun. 23, 1983).

in nature and did not require notice-and-comment even though the FLRA chose to use that procedure. The amendments solely concerned the "manner in which parties present[ed] themselves or their viewpoints to the agency." *Hurson Assocs.*, 229 F.3d at 280 (citations omitted). They did not impose "substantive value judgments" or otherwise alter the standards by which representation matters would be decided. *Id*. at 281.

The vast majority of the 1995 amendments were procedural in nature; however, there was one substantive addition to the regulations—Section 2422.34, which set forth the "obligations and rights of the parties during the pendency of a representation petition." 60 Fed. Reg. 39878, 39880, 39887 (Aug. 4, 1995); 60 Fed. Reg. 67288, 67298 (Dec. 29, 1995). The substance of Section 2422.34 is unchanged in the IFR—the parties' rights and obligations remain the same during the pendency of a representation petition. 91 Fed. Reg. 13933, 13937-38 (Mar. 24, 2026). The IFR merely incorporates another existing regulation and clarifies that requests for reconsideration do not operate as a stay of, or relieve parties' obligations to comply with, an Authority order. *See* 5 C.F.R. § 2429.17.

While the FLRA afforded notice-and-comment for the 1983 and 1995 amendments concerning both procedural and substantive rules, it did not do so for the delegations themselves. Offering notice-and-comment for those prior procedural amendments were additional procedural rights not required under the APA. "Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc. ("Vt. Yankee")*, 435 U.S. 519, 524 (1978); *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pa. ("Little Sisters")*, 591 U.S. 657, 685 (2020) (noting that APA procedural requirements are the "'maximum procedural requirements' that an agency must

17

follow in order to promulgate a rule.") (citations omitted).[10] And, as *Perez v. Mortgage Bankers Association* also notes: "[b]ecause an agency is not required to use notice-and-comment procedures to issue an initial interpretive rule, it is also not required to use those procedures when it amends or repeals that interpretive rule." 575 U.S. 92, 101 (2015). Since the APA exempts procedural rules from notice-and-comment procedures, it follows that agencies are not required to use such procedures when amending or repealing a rule of agency organization, procedure, or practice. 5 U.S.C. § 553(b)(A).[11]

> **D.    Although not required to do so, the FLRA complied with APA notice-and-comment requirements**

As the IFR made only procedural changes, the FLRA was not required to engage in notice-and-comment procedures. But even if notice-and-comment were mandatory, the FLRA fully complied with the APA's notice-and-comment requirements.

The APA requires only that Federal agencies: (1) provide adequate notice before promulgating a rule that has legal force; (2) give interested parties "an opportunity to participate in the rule making through submission of written data, views, or arguments;" (3) include a

---

[10] Plaintiffs' citation to *Levesque v. Block,* 723 F.2d 175, 187 (1st Cir. 1983) is also misplaced, as it ignores the Supreme Court's decision in *Little Sisters,* 591 U.S. at 686, which upheld the validity of the interim final rule process used here, because the interim final rule process satisfies those APA requirements. Pl. Br. at 27.

[11] Plaintiffs cite *Perez*, 575 U.S. at 101, *Castellini v. Lappin*, 365 F. Supp. 2d 197, 202-03 (D. Mass. 2005), and *Manufactured Hous. Inst. v. EPA*, 467 F.3d 391, 399 (4th Cir. 2006), but those cases do not stand for the proposition that subsequent changes to procedural rules must be subject to notice-and-comment if the agency had provided notice-and-comment to implement the initial rules. *Perez* stands for the unremarkable proposition that agencies are *not* required to use notice-and-comment rulemaking in either issuing or amending interpretive rules. 575 U.S. at 101. In *Manufactured Hous. Inst.*, the agency engaged in rulemaking without referencing an exemption and then subsequently argued that notice-and-comment was actually not required. 467 F.3d at 399. Here, the IFR explicitly states that notice-and-comment is not required because it is a procedural rule. 91 Fed. Reg. 13933. *Castellini* concerned an agency attempt to repudiate a *substantive* (not procedural) rule without using notice-and-comment. 365 F. Supp. 2d at 203.

concise general statement of the final rule's basis and purpose; and (4) publish the rule 30 days before it becomes effective. *Little Sisters*, 591 U.S. at 685-86 (quoting and citing 5 U.S.C. § 553(b)-(d)). These are "the maximum procedural requirements [that] Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures." *Id.* at 686 (quoting *Perez*, 575 U.S. at 102)*.* This is true regardless of whether a final rule is preceded by a "proposed rule" or by an interim final rule. *See id.* at 683 (holding that 30-day comment period for an interim final rule satisfied notice-and-comment procedures and rejecting claim that petitioners were required to first publish a "General Notice of Proposed Rulemaking"). The Supreme Court has "'repeatedly rejected courts' attempts to impose 'judge-made procedur[es]' in addition to the APA's mandates." *Id*. at 685-86 (quoting *Perez*, 575 U.S. at 102) (alterations in original).

Here, the FLRA satisfied all four notice-and-comment requirements. The FLRA: (1) issued the IFR on March 24, 2026; (2) included a detailed statement of the rule's purpose; (3) solicited comments from interested parties for a period of 30 days; and (4) announced an effective date of April 23, 2026—30 days after the IFR was published. Plaintiffs mostly do not address this and instead focus on whether the IFR is procedural or substantive. Pl. Br. at 25-28. Although they briefly acknowledge that Defendant accepted comments for 30 days, they argue that this opportunity to comment was not sufficient to cure Defendant's alleged "procedural violation." *Id.* at 28 (citing *Levesque*, 723 F.2d at 187).

To show that this 30-day deadline fell short of the APA's notice-and-comment procedures, Plaintiffs must show that they were prejudiced by it. *Little Sisters*, 591 U.S. at 684 ("We have previously noted that the rule of prejudicial error is treated as an 'administrative law . . . harmless error rule.'") (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 659-60 (2007)); *Phillips Petroleum Co. v. U.S. EPA*, 803 F.2d 545, 559 (10th Cir. 1986)

19

("We further note that [plaintiff] has presented no evidence that they were prejudiced by the . . . [a]gency's refusal to extend the comment period.").

Plaintiffs fail to show prejudice. Although they claim that they "were prejudiced by being unable to file comments prior to the rule's publication," Pl. Br., at 15, they did, in fact, submit a comment ten days before the April 23, 2026 deadline, along with the 23-page Complaint and a 28-page brief in this litigation. *See* Def. Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def. 56.1"), ¶ 28. In the absence of any prejudice to Plaintiffs, the 30-day comment period satisfied the APA's notice-and-comment requirements. *See Conn. Light & Power Co. v. Nuclear Regul. Comm'n*, 673 F.2d 525, 534 (D.C. Cir. 1982) (denying plaintiff's claim that a 30-day comment period was unreasonable, notwithstanding plaintiff's claim that the rule adopted a novel policy); *see also N. Am. Van Lines, Inv. v. Interstate Com. Comm'n*, 666 F.2d 1087, 1092 (7th Cir. 1981) ("Absent compelling circumstances ... once an agency has fulfilled the statutory requirements governing a § 553 rulemaking, its decision may not be subjected to any additional procedural restraints.") (citing *Vt. Yankee*, 435 U.S. at 546-49). The FLRA was not obligated to engage in notice-and-comment procedures. However, even assuming it was, it fully complied with those procedures, including by accepting comments for a 30-day window.

## II.    THE IFR IS NOT ARBITRARY OR CAPRICIOUS

Plaintiffs' arguments that the Delegation Memorandum and IFR were arbitrary and capricious are misplaced. First, the Court should defer to the Delegation Memorandum and IFR because they concern the procedural implementation of an exercise of power committed solely to the Authority. Second, the FLRA's reasonable and reasonably explained justification for its actions—including the effective date of the IFR—was not arbitrary and capricious.

20

> **A.** **This Court should defer to the Authority's Delegation Memorandum and IFR, which relate solely to a delegation of power and the procedures necessary to implement it.**

Courts do not review agencies' discretionary procedural decisions, such as those in the Delegation Memorandum and IFR. "In the absence of any statutory or self-imposed limitation, we have no jurisdiction to review under the APA an agency's procedural decision regarding how best to make a substantive decision committed by law to the agency's discretion." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Mar. Admin.*, 215 F.3d 37, 43 (D.C. Cir. 2000). "[W]e have no discretion to order a separate rulemaking unless a statute clearly ordains a particular sequence of procedures." *GPA Midstream Ass'n v. U.S. Dep't of Transp.*, 67 F.4th 1188, 1196 (D.C. Cir. 2023) (citation omitted). "The formulation of procedures is within the discretion of agencies to which Congress has confided the responsibility for substantive judgments." *Univ. of Chi. Med. Ctr. v. Kennedy,* No. 24-5188, 2025 WL 3183158, at *2 (D.C. Cir. Nov. 14, 2025) (citing *Vt. Yankee*, 435 U.S. at 542–48).

In this case, the FSLMRS does not require, and Plaintiffs do not argue, that the FLRA, as a matter of law, must appoint a regional director and ask the regional director to render an initial decision before the Authority resolves a representation matter. Indeed, the Delegation Memorandum and IFR are the product of a long chain of decisions statutorily committed to the Authority's discretion: the Authority *may* choose to exercise its statutory prerogative to decide representation matters with "agents," 5 U.S.C. §§ 7105(a)(2)(A)-(B), (c); the Authority chooses to appoint regional directors as it *may* from time to time find necessary *id.* § 7105(d); the Authority *may* delegate to regional directors functions as *may* be necessary, *id.* § 7105(d), including functions related to representation matters, *id.* §§ 7105(e)(1), 7111, 7112; the Authority *may* choose to permit regional directors to issue decisions that may become final as

21

"the action of the Authority" if review is not granted, *id.* § 7105(f). In short, the FSLMRS makes two points clearly: (1) the decisions to appoint and delegate to regional directors any statutory functions are firmly committed to the Authority's discretion, and (2) any procedures for reviewing regional directors' decisions turn on that discretionary decision. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("[T]he word 'may' . . . implies discretion[.]") (citations omitted); *United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("same). The FLRA's past exercise of its discretion to provide that optional process does not bar it from reconsidering that process now, because it is not mandated by the Statute. *See Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 655 (1990) (citing *Vt. Yankee,* 435 U.S. at 524).

Courts, including the First Circuit, have respected broad agency discretion to fashion procedural rules and applied this principle to representation proceedings under the NLRA. *See Nightingale Oil Co. v. NLRB*, 905 F.2d 528, 531, 535 (1st Cir. 1990) (respecting agency discretion on balloting procedures that were less than "ideal"). The Supreme Court has "interpreted [the NLRA] to grant the [NLRB] wide discretion in devising the procedures employed in deciding whether a question of representation exists." *Associated Builders & Contractors of Tex., Inc. v. NLRB,* 826 F.3d 215, 222 (5th Cir. 2016). "The [Supreme] Court has never wavered in this view of the Board's delegated authority under the NLRA[:] the Board's broad and undisputed discretion to assess the propriety and results of representation elections[.]" *Jones Lang LaSalle Ams., Inc. v. NLRB*, 128 F.4th 1288, 1294 (D.C. Cir. 2025) (internal quotation marks and citation omitted). This is because "Congress has entrusted [the NLRB] with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330 (1946) (citations omitted). "The control of the election proceeding, and the

22

determination of the steps necessary to conduct that election fairly were matters which Congress entrusted to the Board alone." *NLRB v. Waterman S.S. Corp.*, 309 U.S. 206, 226 (1940) (citations omitted). The Seventh Circuit has described the NLRB's authority to regulate elections as "plenary." *Mosey Mfg. Co., Inc. v. NLRB*, 701 F.2d 610, 615 (7th Cir. 1983) (en banc). "There is good reason for this. A representation proceeding is intended to be informal and nonadversarial." *Beth Israel Hosp. & Geriatric Ctr. v. NLRB*, 688 F.2d 697, 699 (10th Cir. 1982). Similarly, the Fifth Circuit in *Associated Builders* upheld the NLRB's rules allegedly restricting the litigation of voter eligibility at a pre-election hearing because the rules "did not exceed the bounds of the Board's statutory authority under the NLRA." 826 F.3d at 223.

Similar deference is appropriate in this case because the FLRA's procedural changes are plainly committed to the FLRA's discretion and authorized under the FSLMRS. Moreover, the Delegation Memorandum and IFR are a reflection of the Authority's resource allocation and supervision of regional directors—matters of agency management and personnel. The broad statutory grant for the FLRA to appoint and then delegate certain powers to regional directors are decisions generally "committed to agency discretion" similar to other cases concerning supervision of employees. *See Conyers v. Rossides,* 558 F.3d 137, 148 (2d Cir. 2009) (cited in *Field v. Napolitano*, 663 F.3d 505, 512 (1st Cir. 2011)). The FSLMRS grants the FLRA the full discretion to conclude if regional directors are "necessary" to the administration of the Statute and in what ways. *Cf. Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, No. CV 18-10874-FDS, 2023 WL 4471809, at *6 (D. Mass. Jul. 11, 2023) ("'The OMB Guidelines provide that agencies 'are required to undertake only the degree of correction that they conclude is *appropriate* for the nature and timeliness of the information involved,' which is akin to saying that the decision is committed to the agency's discretion.'") (quotation omitted) (emphasis

23

added). The decision to unconditionally delegate, or not delegate, to an employee (as permitted by a statute) is committed to the agency's discretion. *E.g., Burdue v. FAA*, 774 F.3d 1076, 1082 (6th Cir. 2014). Further, these revisions generally concern "a matter relating to agency management or personnel" exempt from notice-and-comment requirements, 5 U.S.C. § 553(a)(2). Deference is owed to the Authority's discretionary decision to revisit the delegation in this case.

### B.    Neither the substance, nor the effective date, of the IFR is arbitrary or capricious

The Supreme Court describes "arbitrary and capricious" as a "narrow" standard of review. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (citation omitted). This standard of review requires Courts to "examine the relevant data and articulate a satisfactory explanation for its action." *Id.* The Supreme Court has "made clear, however, that a court is not to substitute its judgment for that of the agency, and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned[.]'" *Id.* at 513-14 (internal quotations and quotation marks omitted). "Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. 168, 180 (2025) (citations omitted). Both the substance and effective date of the IFR meet these standards.

### 1.   The IFR is reasonable and reasonably explained.

The Authority's explanation of its desire to improve the processing of representation matters meets APA standards. The IFR explained the FLRA's vision of a "streamlined process in which representation matters are resolved through the collaborative efforts of the regional offices and the Authority—rather than a strict separation of an initial decision by [a regional director], followed by a possible appeal to, and potentially duplicative decision by, the Authority." 91 Fed.

24

Reg. 13933. It explained that in the new system, "parties will benefit from review by the Authority on all issues of importance in representation matters," while still retaining the expertise of regional directors, because the Authority and regional offices "will work collaboratively to resolve representation matters." *Id.* at 13934. The Authority anticipated that parties would benefit from this new decision-making framework, because "the collective insights and experience of the regional offices and the Authority will shape the decisions that parties receive." *Id.* Thus, contrary to Plaintiffs' argument (Pl. Br. at 18), the Authority explained that not only efficiency but also the authoritativeness of representation decisions were the reasons that it revisited the delegation and issued the IFR. This will lead to a more robust jurisprudence in the area of representation law. "Regardless of whether one agrees with those explanations as a policy matter, [a court] cannot say they are irrational[,]" and thus deemed arbitrary and capricious. *AFL-CIO v. NLRB*, 57 F.4th at 1047.

Plaintiffs' arguments that the IFR was arbitrary and capricious because it failed to address potential inefficiencies (Pl. Br. at 18) both miss the point and are speculative. First, the Delegation Memorandum and IFR concern not only speed, but also authoritativeness. As Plaintiffs point out (Pl. Br. at 19), the Authority rarely grants review of representation matters. This could mean (as Plaintiffs allege) that regional directors' decisions are nearly perfect and satisfactory to both parties. But it could also mean that the limited grounds for review deter party applications for review of regional decisions—resulting in unreviewed and unreviewable determinations. The Authority's collaboration with regional directors throughout the representation process addresses this issue in a way that preserves the best aspects of current processes. It retains direct regional director involvement in investigations, hearings, and elections, while providing parties with the benefit of the Authority's expert and authoritative

25

decisions on those matters. The product of this new framework will be authoritative decisions on issues of consequence throughout the representation process that incorporate the Authority and regional directors' best judgment and experience.

Plaintiffs' speculation (Pl. Br. at 11-15, 19-20, 26) as to the impact that the IFR changes will have on the Authority's caseloads and case processing times is just that—speculation. Although some government agencies have proposed workforce changes, it is impossible to predict the extent to which those changes might be adopted. It is a further stretch to predict what impact any potential workforce changes might have on the FLRA's workload. What is certain is that Congress gave the Authority responsibility for managing its own caseloads and annually reporting on its caseloads. *See* Def. 56.1 ¶ 17. It is also certain that the Authority will be accountable to Congress if it does not effectively and efficiently manage those caseloads.

### 2. The IFR's effective date is not arbitrary or capricious.

Contrary to Plaintiffs' claims (Pl. Br. at 23-25), the IFR's effective date is not arbitrary and capricious. Courts have occasionally found an effective date of 30 days to be arbitrary and capricious. Pl. Br. at 23-25 (citing *Nat'l Ass'n of Indep. Television Producers & Distribs. v. FCC* ("*Television Producers*"), 502 F.2d 249, 253-55 (2d Cir. 1974); *AFL-CIO v. Chao*, 297 F. Supp. 2d 155, 164-65 (D.D.C. 2003)). However, courts only do so in extraordinary circumstances. *See Phillips Petroleum Co.*, 803 F.2d at 559 ("Absent constitutional constraints or extremely compelling circumstances the 'administrative agencies should be free to fashion their own rules of procedure and methods of inquiry permitting them to discharge their multitudinous duties.'") (quoting *Vt. Yankee*, 435 U.S. at 543); *N. Am. Van Lines, Inc.*, 666 F.2d at 1092 (same).

This principle is well-illustrated by the cases cited by Plaintiffs. In *Television Producers*, the FCC promulgated a rule that required television stations in the 50 largest metropolitan areas

26

to make major changes to their primetime broadcasting schedules. 502 F.2d at 251. The court found that the rule's effective date was "arbitrary and unreasonable" because it did not account for the fact that networks typically begin planning their broadcast programs "twelve to eighteen months before the start of the season." *Id*. at 254. The court also observed that the rule "would have a very great impact on" independent television producers who competed for primetime broadcast slots, as it would force them to shorten the typical length of TV shows from one hour to 30 minutes. *Id*. Accordingly, the court concluded that leaving the rule's effective date in place would "cause serious economic harm" to the television industry. *Id*. at 254-55.

In *AFL-CIO*, the Department of Labor enacted a rule changing the methods by which labor unions must report their financial transactions under the Labor-Management Reporting and Disclosure Act. 297 F. Supp. 2d at 157-58. The impacts of this rule were profound: its implementation would carry an estimated cost of between $80-$700 million; force unions to make "major," "costly," and "time-consuming changes" to their accounting systems; "require special training and supervision of all personnel with responsibility for" complying with the new rule; and jeopardize unions' ability to comply with their statutory reporting requirements. *Id*. at 159, 162-63. Despite imposing these severe burdens, the agency gave "the covered unions less than two months to make the enormous changes necessary to their accounting, computer, software and staff training to comply with the new Rule." *Id*. at 164. Accordingly, the court found that the effective date was arbitrary and capricious, and enjoined it.

Here, to the contrary, Plaintiffs allege only speculative harm (*see* Section II(B)(3))—they will not be forced to make any "major" or "time-consuming" changes to their operations or business models, or hire or train any new personnel to comply with the IFR. Their alleged harms pale in comparison to those seen in *Television Producers* and *AFL-CIO*, where the plaintiffs

27

stood to suffer severe economic and organizational damage if the effective date was not enjoined. Plaintiffs also do not demonstrate that the effective date will pose any logistical problems or prevent them from complying with the IFR in a timely fashion. *See Television Producers*, 502 F.2d at 254 (impacted parties needed 12-18 months' advanced notice to adjust their broadcasting programs to new rule); *AFL-CIO*, 297 F. Supp. 2d at 164 (effective date of two months insufficient to "make the enormous changes necessary" to comply with new rule).

Instead, as set forth in Section II(B)(3), Plaintiffs' alleged injuries are either noncognizable or speculative, and thus do not amount to "extremely compelling circumstances" justifying the imposition of "more stringent procedural requirements" than the APA's 30-day minimum. *Phillips Petroleum Co.*, 803 F.2d at 559 (quoting *Vt. Yankee*, 534 U.S. at 543). Accordingly, there are no grounds to find that the IFR's effective date is arbitrary and capricious.

### 3.   Plaintiffs' alleged harms are noncognizable or speculative.

While Plaintiffs may disagree strongly with the Delegation Memorandum and IFR, they have been unable to articulate a cognizable and certain harm that will flow from them.

Plaintiffs have no reliance interest in the Authority's delegation of certain representation matters to its regional directors. The fact that the Authority has not exercised its powers directly in representation matters for more than 40 years does not change or limit the Authority's right. *See United States v. Morton Salt Co.*, 338 U.S. 632, 647 (1950) ("The fact that powers long have been unexercised well may call for close scrutiny as to whether they exist; but if granted, they are not lost by being allowed to lie dormant, any more than nonexistent powers can be prescribed by an unchallenged exercise."); *see also FTC v. Seven & I Holdings, Co.,* 780 F. Supp. 3d 17, 31 (D.D.C. 2025). Reliance on an agency continuing to leave a statutory power it possesses unexercised does not, by itself, create a cognizable harm. The agency has not changed

28

its interpretation of the Statute or displaced any statutory rights. Nor do Plaintiffs have a reliance interest in the regional directors' expertise. Pl. Br. at 13. As the IFR indicates, the Authority is the statutory expert and will also continue to rely on the expertise of regional directors in resolving representation matters.

The *only* harms alleged are speculative harms based on theoretical backlogs. Pl. Br. at 11-15, 19-20, 26. But Plaintiffs' speculation concerning the FLRA's future caseloads and the impact that Authority collaboration with regional directors will have on representation case processing times is not a cognizable harm. *See, e.g., Bd. of Water, Light & Sinking Fund Comm'rs of City of Dalton, Ga. v. FERC*, 294 F.3d 1317, 1329 n.10 (11th Cir. 2002) (noting that it is not "arbitrary and capricious" to disregard speculative claims of costs). The other harms claimed by Plaintiffs—potential loss of momentum in organizing drives and potential delay in the benefits of union membership (Pl. Br. at 12-15)—are further speculatory extrapolations. Again, Plaintiffs cannot know—in the first half of 2026—what impact possible future government changes will have on Defendant's caseload. And Plaintiffs do not factor into their speculations the simple fact that implementation of the revised delegation will be made easier by the Authority's decisions: (1) not to change the basic system by which representation matters are processed, and (2) to continue to rely on the expertise, professionalism, and commitment of its regional directors as the Authority collaborates with them in representation matters.

There are also adequate remedies if Plaintiffs identify harms in any specific case or in the future. If Plaintiffs have amendments to suggest based on their experience with these changed procedures, they can petition the Authority for rule-making, *see* 5 C.F.R. § 2429.28 ("Petitions for amendment of regulations"). If Plaintiffs identify bias in any particular case, then they can allege it in that case, but there are no grounds or evidence to suggest categorical bias. *See*

29

*Withrow v. Larkin,* 421 U.S. 35, 47 (1975) (procedural due process claims must overcome "presumption of honesty and integrity in those serving as adjudicators"); *see also, e.g., 1621 Route 22 W. Operating Co., LLC v. NLRB,* 725 F. App'x 129, 136 (3d Cir. 2018) (unpublished) (rejecting specific allegations of bias in NLRB context).

Nor are Plaintiffs' assertions of speculative harm to *pending* cases persuasive. "[A]dministrative rules will not be construed to have retroactive effect unless their language requires this result." *Landgraf v. USI Film Prods*, 511 U.S. 244, 264 (1994) (quoting *Bowen v. Geo. Univ. Hosp.*, 488 U.S. 204, 208 (1988)). And "[b]y the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen*, 488 U.S. at 472. Nothing in the regulations or the Statute would suggest that these regulations are retroactive, and the FLRA did not intend them to be so. *See Wille v. Lutnic*k, 158 F.4th 539, 552 (4th Cir. 2025).

At bottom, Plaintiffs seem to be concerned that there should be a class of cases for which a regional director would issue a decision in their favor, no interested party would seek review, *and* that such a decision would differ from how the Authority would decide the issue in collaboration with the regional director. Not only would the regional director decision be constitutionally problematic, this is a speculative fear and not one that the APA could cure.

### **CONCLUSION**

In issuing the Delegation Memorandum and IFR, the Authority lawfully exercised powers granted to it by Congress. In so doing, it fulfilled APA requirements for procedural or organizational rules. The FLRA therefore respectfully requests the Court deny the Plaintiffs' motion for summary judgment and grant the FLRA's cross-motion for summary judgment.

Respectfully submitted,

By:  /s/ Thomas Tso
     THOMAS TSO
     Solicitor

     Rebecca J. Osborne
     Deputy Solicitor

     Adam M. Johnson
     Attorney

     Elizabeth R. Wiseman
     Attorney

     Federal Labor Relations Authority
     1400 K Street, N.W., Suite 200
     Washington, D.C. 20424
     (771) 444-5779
     ttso@FLRA.gov

Dated: May 1, 2026

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 1, 2026, the above document was filed through the Electronic Case Filing system for filing and service was accomplished for the registered participants.

/s/ Thomas Tso
THOMAS TSO