# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, ET AL., | ) ) ) | |
| | ) | Civil Action Number: 1:26-cv-11747-DJC |
| v. | ) ) | **Leave to file granted on May 13, 2026** |
| U.S. FEDERAL LABOR RELATIONS AUTHORITY. | ) ) ) | |

---

## REPLY BRIEF OF THE FEDERAL LABOR RELATIONS AUTHORITY IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

THOMAS TSO
Solicitor

REBECCA J. OSBORNE
Deputy Solicitor

ADAM M. JOHNSON
Attorney

ELIZABETH R. WISEMAN
Attorney

Federal Labor Relations Authority
1400 K Street NW
Washington, D.C. 20424
771-444-5779
ttso@flra.gov

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bachow Commc'ns, Inc. v. FCC,*
  237 F.3d 683 (D.C. Cir. 2001)........................................................................................ 1

*Citizens Awareness Network, Inc. v. United States,*
  391 F.3d 338 (1st Cir. 2004)......................................................................... 2, 4, 5

*Department of Homeland Security v. Regents of the University of California,*
  591 U.S. 1 (2020) ..........................................................................................3-4

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009)........................................................................................ 5

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
  591 U.S. 657 (2020) ....................................................................................... 5

*National Association of Home Health Agencies v. Schweiker,*
  690 F.2d 932 (D.C. Cir. 1982)........................................................................ 2

*Ngure v. Ashcroft,*
  367 F.3d 975 (8th Cir. 2004) ......................................................................... 2

*Pension Benefit Guaranty Corporation v. LTV Corporation,*
  496 U.S. 633 (1990) ....................................................................................... 3

*Stauffer v. IRS,*
  285 F. Supp. 3d 474 (D. Mass 2017)............................................................. 2

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,*
  435 U.S. 519 (1978) .......................................................................... 2, 3, 4, 5

**Regulations and Federal Register Notices**

91 Fed. Reg. 13933 (Mar. 24, 2026)..................................................................*Passim*

91 Fed. Reg. 13949 (Mar. 24, 2026)..................................................................*Passim*

Plaintiffs' *Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment* ("Pl. Opp.") simply repeats the standards and cases cited in their initial brief in support of their summary judgment motion, and conclusorily states the importance of the Federal Labor Relations Authority (FLRA)'s Delegation Memorandum[1] and Interim Final Rule ("IFR").[2] But Plaintiffs continue to elude the necessary linchpin of their argument: on what "substantive rights" do the regulations entrench?

In some places, Plaintiffs reference a "right of unions and agencies to seek review from the Authority of an initial decision." Pl. Opp. at 20. As Plaintiffs concede, neither the prior regulations nor the Federal Service Labor-Management Relations Statute (the "Statute") granted a *right* to Authority review because the prior regulations and the Statute guaranteed only *one* decision; Authority review was purely discretionary. Pl. Opp. at 23. Plaintiffs should characterize the purported "right" under the prior regulations as merely a "right" to file papers with the Authority and hope the Authority reviews allegedly erroneous Regional Director decisions. *See* Pl. Opp. at 1 [Doc. 21] ("subject only to discretionary appellate review . . . only a small fraction of regional decisions are appealed to, much less taken up"). Described correctly, Plaintiffs' arguments fall apart. A right to file papers for a decision not guaranteed by law is an optional procedural right that agencies can modify without notice and comment. *See, e.g.*, *Bachow Commc'ns, Inc. v. FCC*, 237 F.3d 683, 690 (D.C. Cir. 2001) ("The right to amend is no more substantive than the right to file an application in the first place, which we have previously held the Commission may suspend without notice and comment."). If Plaintiffs are concerned about

---

[1] *Amendment to Memorandum Describing the Authority and Assigned Responsibilities of the General Counsel of the Federal Labor Relations Authority*, 91 Fed. Reg. 13949 (Mar. 24, 2026).

[2] *Meaning of Terms as Used in This Subchapter; Representation Proceedings; National Consultation Rights and Consultation Rights on Government-wide Rules or Regulations; Miscellaneous and General Requirements*, 91 Fed. Reg. 13933 (Mar. 24, 2026).

needing the Authority to review and correct erroneous Regional Director decisions, Plaintiffs should applaud the regulatory changes, because the amendments *guarantee* access to Authority decision-making in *all cases*. The amendments would now correct errors upfront, eliminate delays, and obviate the costs incurred in seeking Authority review. Thus, the instant case stands in contrast to *National Association of Home Health Agencies v. Schweiker*, 690 F.2d 932, 949 (D.C. Cir. 1982), which *eliminated* access to the Secretary of Health and Human Services, the principal officer, and mandated decision-making by agents. Instead, the FLRA increases—rather than eliminates—access to the principal officer(s) and expands the collaboration between its agents (Regional Directors) and the Authority.

Plaintiffs contend that this new process will impede their substantive rights by erecting an allegedly slower process. Pl. Opp. at 24. As this Court recognized, value judgments about procedural efficiency are still procedural rules. *Stauffer v. IRS,* 285 F. Supp. 3d 474, 483 (D. Mass 2017). Compared with the cases cited by Plaintiffs, the FLRA did not change any process rights guaranteed under a statute or reinterpret statutory terms (like a "hearing"). *See, e.g.*, Pl. Opp. at 5 (citing *Citizens Awareness Network, Inc. v. United States ("CAN")*, 391 F.3d 338, 344 (1st Cir. 2004)). Instead, the FLRA exercised its statutory discretion to modify optional processes. "Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc. ("Vt. Yankee")*, 435 U.S. 519, 524 (1978); *e.g., Ngure v. Ashcroft,* 367 F.3d 975, 983 (8th Cir. 2004). Moreover, based on its expertise in these matters, the FLRA determined these modified procedures would be more efficient. *See CAN*, 391 F.3d at 353. Plaintiffs' predictions about efficiency under any regime in the *future* are wholly speculative given the extent to which that

2

measure depends on a variety of unpredictable factors such as: case complexity, case volume, contested cases, agency budgets, changing legal landscape, agency enforcement priorities, and personnel levels. Statements about efficiency gains by the National Labor Relations Board Chairman in a 1961 report are wholly irrelevant. *See* Pl. Opp. at 1. In fact, the use of the Regional Directors when the Authority lacks a *quorum* indicates the Authority values efficiency and speed, by permitting processes to continue when the Authority cannot proceed. Moreover, the modified procedures support the Authority's emphasis on "authoritativeness": when an Authority with a quorum can establish precedent in decisions of consequence, it will do so. The amendments "provide parties in most cases with decisions from the Authority on all consequential issues in representation proceedings." 91 Fed. Reg. 13933.

The resolution of this case is simple. Plaintiffs concede that the procedures for deciding bargaining unit issues are *optional* and that the Statute does not mandate Regional Director involvement. Pl. Opp. at 6. Not surprisingly, Plaintiffs ignore *Vt. Yankee* and *Pension Benefit Guaranty Corporation v. LTV Corporation* ("*PBGC*"), 496 U.S. 633 (1990). As *Vt. Yankee* and *PBGC* confirm, even under arbitrary and capricious review, courts defer to the agencies under "the general proposition that courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." *PBGC*, 496 U.S. at 654; *see also Vt. Yankee*, 435 U.S. at 524. Given the procedural nature of the rules, Plaintiffs' reliance on *Department of Homeland Security v. Regents of the University of California,* 591 U.S. 1 (2020), is inapposite. That decision concerned an agency's changing views on Deferred Action for Childhood Arrivals ("DACA"), which had a clear, substantive effect on the lives of individuals who had significant reliance interests on the DACA program; the change was never a simple procedural change. There, the rescission failed to consider one significant substantive basis for a policy that

engendered "serious reliance" interests. *Id.* at 29. In contrast, the "reliance" interest that

Plaintiffs assert here is efficiency, which the FLRA considered; the FLRA just reached a

different conclusion about how to be efficient. As the Supreme Court repeated in *Regents*:

> We do not decide whether DACA or its rescission are sound policies. 'The wisdom' of those decisions 'is none of our concern.' . . . . We address only whether the agency complied with the procedural requirement that it provide a reasoned explanation for its action.

*Id.* at 34 (internal citations omitted).

Plaintiffs' reliance on *CAN* is similarly misplaced as that decision actually supports the

FLRA's position. In *CAN*, the agency made significant changes by eliminating rights to

discovery and curtailing cross-examination. 391 F.3d at 350. Despite these impactful changes,

the First Circuit deemed them procedural rules, *id.* at 353, and stated:

> As a general principle, agencies have broad authority to formulate their own procedures . . . . A necessary corollary of this authority is the freedom to experiment with different procedural formats.

*Id.* at 352. The Court continued:

> An agency may not act precipitously or in an irrational manner in revising its rules. But so long as these limits are observed, it is not the place of a reviewing court to second-guess the agency's decision as to *when* to make procedural changes. It is enough that the agency reasonably determines that existing processes are unsatisfactory and takes steps that are fairly targeted at improving the situation.

*Id.* (emphasis in original). Plaintiffs present no argument that the FLRA acted more

"precipitously" or "irrational[ly]" than in any of the more impactful procedural changes upheld

by courts, such as in *CAN*:

> In this case, the NRC has determined that its existing rules of practice lead to hearings that are cumbersome, unnecessarily protracted, and wasteful of the resources of the parties and the Commission. This determination warrants a high degree of deference. *See Vt. Yankee*, 435 U.S. at 543–44, 98 S.Ct. 1197 (holding that agencies' evaluations of their procedural needs are entitled to great respect). Although the petitioners may disagree, we descry nothing in the record that would

4

support setting aside the rule on the basis that the agency should have left well enough alone.

*Id.* The First Circuit (1) rejected the "arbitrary and capricious" challenge to a change in longstanding practice (40 years) based on a "thin" explanation that such changes would bring about efficiency; and (2) concluded that plaintiffs cannot "handcuff" agencies "simply because certain of their constituencies admired the status quo." *Id.* at 352-53. On top of the "leeway" afforded agencies on procedural matters, the FLRA's changes pale in comparison to the impactful changes in *CAN,* and are amply justified by: (1) eliminating the need for "duplicative" discretionary review, 91 Fed. Reg. at 13933; (2) leveraging collaboration of the agency's components, 91 Fed. Reg. at 13934; and (3) letting the authoritative *expert* decide issues of consequence, *id.* Plaintiffs respond merely with admiration of the status quo.

Moreover, *CAN*-level scrutiny into regulatory changes may even be too high (despite the Court rejecting a challenge to a "thin" agency explanation). The Supreme Court in *FCC v. Fox Television Stations, Inc.*, reiterated that its "opinion in *State Farm* neither held nor implied that every agency action representing a policy change must be justified by reasons more substantial than those required to adopt a policy in the first instance." 556 U.S. 502, 514 (2009); *see also id.* at 551 (Breyer, J., dissenting) (stating the Supreme Court changed what the courts of appeals decisions did in "practice," citing *CAN*, 391 F.3d at 352).

Plaintiffs' discussion of *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020), Pl. Opp. at 18, also misses the mark. As the FLRA argued in its brief, the FLRA had no obligation to undergo notice-and-comment rulemaking for these procedural and organizational rules. Nevertheless, consistent with the process approved in *Little Sisters*, the FLRA accepted comments on the IFR, including from Plaintiffs, and will issue a Final Rule after a review of those comments. That is all the APA requires.

5

Respectfully submitted,

By:    /s/ Thomas Tso
THOMAS TSO
Solicitor

Rebecca J. Osborne
Deputy Solicitor

Adam M. Johnson
Attorney

Elizabeth R. Wiseman
Attorney

Federal Labor Relations Authority
1400 K Street, N.W., Suite 200
Washington, D.C. 20424
(771) 444-5779
ttso@FLRA.gov

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 13, 2026, the above document was filed through the Electronic Case Filing system for filing and service was accomplished for the registered participants.

/s/ Rebecca J. Osborne
REBECCA J. OSBORNE

7