**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| American Federation of Government Employees, AFL-CIO et al., | ) ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) No. 26-cv-11747-DJC |
| United States Federal Labor Relations Authority, | ) ) ) ) |
| Defendant. | ) ) ) |

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, C. J.**                                                                                      **June 29, 2026**

## I.      Introduction

On March 24, 2026, the United States Federal Labor Relations Authority (the "FLRA" or the "Authority") published an interim final rule in the federal registry that revises the FLRA's regulations governing public-sector union representation proceedings, changing the delegation of authority that had been in place for forty-three years.  Specifically, it revokes the Authority's prior delegation of authority to regional directors to decide certain matters and, consequently, eliminates an associated review procedure and amends a FLRA delegation memorandum implementing these revisions, all with an effective date for thirty days later, April 23, 2026.  <u>Meaning of Terms as Used in This Subchapter; Representation Proceedings; National Consultation Rights and Consultation Rights on Government-wide Rules or Regulations; Miscellaneous and General Requirements</u>, 91 FR 13933-01 (March 24, 2026) ("interim final rule"); <u>Amendment to Memorandum Describing the</u>

Authority and Assigned Responsibilities of the General Counsel of the Federal Labor Relations Authority, 91 FR 13949-01 (March 24, 2026) ("amendment").  On April 15, 2026, eight federal sector labor organizations, American Federation of Government Employees, AFL-CIO, National Association of Government Employees, Inc., American Federation of State, County and Municipal Employees, AFL-CIO, National Federation of Federal Employees, IAM, AFL-CIO, International Federation of Professional and Technical Engineers, AFL-CIO, National Nurses Organizing Committee/National Nurses United and American Federation of Labor and Congress of Industrial Organizations (collectively, "Plaintiffs"), brought this action against Defendant FLRA alleging that the revisions under the now-effective interim final rule and amendment (collectively, the "IFR") violate the Administrative Procedure Act, 5 U.S.C. §§ 500-596, 701-706 (the "APA").  D. 1.[1]  The parties have now filed cross-motions for summary judgment.  D. 11; D. 28.  After careful consideration of the parties' filings and oral argument by the parties, D. 38, 39, and concluding that both the substance of the IFR and its effective date are arbitrary and capricious in violation of the APA, the Court ALLOWS Plaintiffs' motion for summary judgment, D. 11, and DENIES the FLRA's cross-motion for summary judgment, D. 28.

II.    **Background**

    A.    **Statutory Background**

        1.    *Federal Service Labor-Management Relations Statute ("FSLMRS")*

    In 1978, Congress enacted the FSLMRS, an act that "embodies a statutory scheme . . . for the establishment a law of labor-management relations for the federal public service 'analogous to

---

[1] Given that the amendment "implements the same change to the representation framework as the interim final rule and expressly relies on the interim final rule's reasoning for doing so," Plaintiffs challenge and refer to both actions collectively as "IFR." D. 21 at 14 n.1.  The Court adopts this nomenclature as to the collective actions, and employs "interim final rule" and "amendment," respectively, when referencing these actions individually.

that of the National Labor Relations [Act] in the private sector.'" Dep't of Navy v. Fed. Lab. Rels. Auth., 815 F.2d 797, 798 (1st Cir. 1987) (alteration in original) (quoting Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 92-93 (1983)).  The Act "significantly strengthened the position of public employee unions while carefully preserving the ability of federal managers to maintain 'an effective and efficient Government,'" Bureau of Alcohol, Tobacco & Firearms, 464 U.S. at 92 (quoting 5 U.S.C. § 7101(b)), and declared that "labor organizations and collective bargaining in the civil service are in the public interest," 5 U.S.C. § 7101(a).  "As in private industry, the Act expressly protects the rights of federal employees 'to form, join, or assist any labor organization, or to refrain from any such activity,'" Dep't of Navy, 815 F.2d at 798 (quoting 5. U.S.C. § 7102), and "provides mechanisms for the resolution of questions concerning representation in collective bargaining units," id. (citing 5 U.S.C. §§ 7111, 7112).  "Also as in private sector labor-management relations, the Act establishes the representation rights and duties of labor organizations accorded exclusive representation of employees . . . and causes specified actions by certain Executive agencies, or by labor organizations, to be deemed unfair labor practices . . . against which the FLRA may take appropriate administrative . . ., and if necessary, judicial action." Id. at 799 (citing 5 U.S.C. §§ 7114, 7116, 7118, 7123(b)).

FSLMRA sets forth "a comprehensive legislative scheme regulating the organizational rights of federal employees . . . creat[ing] an administrative agency, the Authority, to administer the Act in a manner similar to the National Labor Relations Board." Am. Fed'n of Gov't Emps., Loc. 3936, AFL-CIO v. Fed. Lab. Rels. Auth., 239 F.3d 66, 70 (1st Cir. 2001) (citing Dep't of Navy, 815 F.2d at 798; 5 U.S.C. §§ 7104, 7105).  Under the Act, the FLRA, "a three-member independent and bipartisan body within the Executive Branch" is responsible for "supervising the collective-bargaining process and administering other aspects of federal labor relations established by Title

3

VII." Bureau of Alcohol, Tobacco & Firearms, 464 U.S. at 92 (citing 5 U.S.C. § 7104). The Authority "adjudicates negotiability disputes, unfair labor practice complaints, bargaining unit issues, arbitration exceptions, and conflicts over the conduct of representational elections." Id. at 93 (citing 5 U.S.C. § 7105(a)(2)(A)-(I)). Additionally, "the Authority may engage in formal rulemaking . . . and is specifically required to 'provide leadership in establishing policies and guidance relating to matters' arising under the Act.'" Id. (citing 5 U.S.C. § 7134; quoting 5 U.S.C. § 7105(a)(1)).

The FSLMRS requires the Authority to "appoint . . . such regional directors . . . as it may from time to time find necessary for the proper performance of its functions." 5 U.S.C. § 7105(d). Section 7105(d) further provides that the Authority "may delegate" to regional directors appointed thereunder "authority to perform such duties and make such expenditures as may be necessary." Id. Specifically, under 5 U.S.C. § 7105(e)(1), "[t]he Authority may delegate to any regional director its authority" to: (a) "determine whether a group of employees is an appropriate unit"; (b) "conduct investigations and to provide for hearings"; (c) "determine whether a question of representation exists and to direct an election"; and (d) "supervise or conduct secret ballot elections and certify the results thereof." Id. §§ 7105(e)(1)(A)-(D). Additionally, pursuant to 5 U.S.C. § 7105(f), the Authority may review any action taken by a regional director pursuant to its delegation of said authority "upon application by any interested person filed within 60 days after the date of the action" and "may affirm, modify, or reverse any action reviewed." Id. § 7105(f). The FSLMRS also provides for judicial review of certain FLRA "order[s]," but it exempts from its judicial-review scheme any "order" arising out of a representation petition "under . . . section 7112 . . . involving an appropriate unit determination." 5 U.S.C. § 7123(a).

4

### 2. *Previous Delegation Scheme*

From 1979 to 1983, the FLRA largely exercised its powers directly in lieu of delegating authority to regional directors. See 91 FR at 13933. The year following FSLMRS's enactment, the FLRA issued "interim rules" that governed, as relevant here, the processing of representation cases, stating that there was an "urgent need to avert a serious disruption of the Federal labor-management relations program and to avoid any prejudice to the rights of interested parties" and, therefore, "good cause for immediately publishing these interim rules and regulations." Processing of Cases; Interim Rules, 44 FR 44740-76, 44740 (July 30, 1979). Under these rules, regional directors were delegated authority to investigate representation petitions, approve agreements for consent elections and issue notices of hearings. Id. at 44740, 44755-57. The next year, in 1980, the FLRA published final rules on this delegation to regional directors, explaining that "the Authority decided that for the present it would not exercise its discretion to delegate responsibility to its Regional Directors to make appropriate unit determinations" as "[s]uch a delegation would be premature because of the absence of established case law under the Statute with respect to appropriate units and related issues." Processing of Cases; Final Rules, 45 FR 3482-524, 3483 (Jan. 17, 1980).

In 1983, the FLRA expanded its delegation of authority to regional directors. On June 23, 1983, the FLRA published "proposed amendments" to its delegation regulations to "implement the delegation [of decisions determining the appropriate unit and directing an election or dismissing the petition] to the Regional Directors and provide for a review procedure by the Authority of Decisions and Orders of Regional Directors in representation cases," Processing of Cases; General Requirements, 48 FR 28816-01, 28816 (Jun. 23, 1983), along with an accompanying amendment, Amendment to Memo. Describing the Authority & Assigned Responsibilities of the General Counsel of the FLRA, 48 FR 28814-01 (June 23, 1983). This delegation of authority was "intended

to provide for the expeditious processing and determination of representation matters." Id. at 28814. The proposed amendments provided for a public comment period, id. at 28816, and the amendment was set to become effective on "the date on which the final amendments . . . are effective," id. at 28814. On September 6, 1983, the FLRA issued a final rule on the proposed amendments to its delegation regulations for representation matters, delegating to regional directors authority and responsibility to determine whether a group of employees is an appropriate bargaining unit, to conduct investigations and to provide for hearings in representation matters, to determine whether a question of representation exists and to direct an election and to supervise or conduct secret ballot elections and certify the results thereof, in accordance with 5 U.S.C. § 7105(e)(1). Processing of Cases; General Requirements, 48 FR 40189-01, 40189 (Sep. 6, 1983). In its analysis of comments and changes, the FLRA noted that "[a]ll parties commenting supported the proposed amendments and the delegation to the Regional Directors." Id. Under the 1983 rule, decisions and orders of regional directors "bec[a]me the action of the Authority" unless a party filed a timely application for review and the Authority granted said request. Id. at 40192.

From 1983 until the present IFR became effective on April 23, 2026, regional directors maintained the delegated authority to make determinations under 5 U.S.C. § 7105(e)(1). 91 FR at 13933; see D. 12 ¶¶ 10-16; D. 30 ¶¶ 10-16. Under this previous structure, the scope of the Authority's review of regional directors' decisions in representation matters under 5 U.S.C. § 7105(f) was limited, and the Authority could grant an application for review only if: "(1) [t]he decision raise[d] an issue for which there [wa]s an absence of precedent; (2) [e]stablished law or policy warrant[ed] reconsideration; or, (3) [t]here [wa]s a genuine issue over whether the Regional Director ha[d]: (i) [f]ailed to apply established law; (ii) [c]ommitted a prejudicial procedural error; or (iii) [c]ommitted a clear and prejudicial error concerning a substantial factual matter." 5 C.F.R.

6

§ 2422.31(c) (2012).  Pursuant to this scheme, virtually all representation petitions were determined exclusively by regional directors without review by the Authority.  See Clarke Decl., D. 20 at 27-29; see also D. 12 ¶ 17; D. 30 ¶ 17.  In 2025, for example, 277 representation petitions were filed with the Office of General Counsel, which employs the regional directors, whereas only six were filed with the Authority for review.  Clarke Decl., D. 20 at 27, 29; D. 12 ¶ 17; D. 30 ¶ 17.  Likewise, before the IFR took effect, the FLRA estimated that in 2026 and 2027, 290 representation petitions would be filed with regional directors, while only five would be filed with the Authority.   Clarke Decl., D. 20 at 27, 29.

**B.**    **Challenged IFR**

On March 24, 2026, the FLRA, over the dissent from one of its members, published the challenged interim final rule in the federal registry.  91 FR 13933.  It stated that the FLRA "intends to revise the regulations governing representation proceedings, as well as other related regulations, so as to provide parties in most cases with decisions from the Authority on all consequential issues in representation proceedings."  Id. at 13933.  Under this new process, "parties will continue filing all representation petitions with the regional offices, who will begin processing those petitions," but "the locus of ultimate decision-making will rest with the Authority," id. at 13933-34.  Among other revisions, the interim final rule revokes the regional directors' delegated authority to decide matters under 5 U.S.C. § 7105(e)(1) and instead provides that the Authority will make those determinations.  Id. at 13934-39.  As regional directors would no longer have authority to make reviewable 5 U.S.C. § 7105(e)(1) determinations, the rule also eliminates the "appeals process" under § 7105(f), except in no-quorum situations.  Id. at 13934.  The FLRA also states that although it "anticipates" that the regional offices will continue, in most cases, to conduct investigations and hearings in representation matters and "intends" for the regional offices, in most cases, to conduct elections

with the Authority's authorization, "Authority staff may also be assigned [investigation and hearing] duties" and "the Authority will make decisions on election agreements and directions of election," including certifying election results, "address[ing] determinative challenged ballots in elections" and "decid[ing] all election objections concerning either the election process itself, or conduct that may have otherwise improperly affected the results of the election." Id. In the event the Authority loses a quorum, the Authority will maintain the prior "two-layered structure" whereby a regional director issues an initial decision with the potential for a party to file an appeal under § 7105(f). Id. at 13939-40. The interim final rule also includes "minor or technical changes" to "correct inadvertent errors and omissions." Id. at 13940. The same day, the FLRA, also over dissent, published an accompanying amendment entitled Amendment to Memorandum Describing the Authority and Assigned Responsibilities of the General Counsel of the Federal Labor Relations Authority which implements amendments to its regulations consistent with the interim final rule, revising its previous delegation regulations to: (1) "revoke[] and delete[]" a section "which delegates to Regional Directors (RDs) authority to process and determine representation matters" and (2) "adopt a new section [] which delegates to RDs authority to process and determine representation matters that arise when the Authority lacks a quorum." Id. at 13949.[2]

Both the interim final rule and the amendment have an effective date of April 23, 2026, id. at 13933, 13949. The interim final rule also provides that "[c]omments will be accepted if received by April 23, 2026." Id. at 13933; see 91 FR at 13952 (dissenting view to the amendment noting that she "would not revise the existing delegation to the FLRA's Regional Directors in

---

[2] Although the FLRA refers to the amendment as a "Delegation Memorandum," D. 29 at 10, the text of the amendment identifies the action as an "amendment," and the amendment was published in the federal registry as a "[f]inal [r]ule." 91 FR at 13949. The parties agree that the amendment implements the revisions outlined in the interim final rule. See D. 21 at 14 n.1; D. 29 at 18; see 91 FR at 13949.

representation matters until [the FLRA] have received and reviewed comments on the regulations"). On April 13, 2026, Plaintiffs submitted comments "opposing the [interim final rule] and seeking that it be withdrawn, or its effective date postponed." D. 12 ¶ 28; D. 30 ¶ 28; <u>see</u> Clarke Decl., D. 20 ¶ 35. Pursuant to their stated, effective dates, both the interim final rule and the amendment became effective on April 23, 2026. 91 FR at 13933, 13949.

## III.   Procedural History

Plaintiffs filed this action on April 15, 2026. D. 1. On April 20, 2026, the parties filed a joint motion for the Court to set an expedited summary judgment briefing schedule and hearing in lieu of Plaintiffs seeking preliminary relief, D. 10, which the Court allowed, D. 22. The parties have now filed cross-motions for summary judgment. D. 11; D. 28. The Court heard oral argument on these motions and took the matters under advisement. D. 38, 39.

## IV.   Standard of Review

Summary judgment is ordinarily appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases involving review of agency action under the APA, however, the traditional Rule 56 standard does not apply due to the limited role of a court in reviewing the administrative record. See <u>Int'l Junior Coll. of Bus. & Tech., Inc. v. Duncan</u>, 802 F.3d 99, 106 (1st Cir. 2015) (observing that "[t]he summary judgment 'rubric' also 'has a special twist in the administrative law context'" (quoting <u>Associated Fisheries of Me., Inc. v. Daley</u>, 127 F.3d 104, 109 (1st Cir. 1997))). Rather, when administrative action is challenged under the APA "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." <u>Coe v. McHugh</u>, 968 F. Supp. 2d 237, 240 (D.D.C. 2013).

9

The APA provides that a reviewing court should "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C). "[A] court is not to substitute its judgment for that of the agency." DHS v. Regents of the Univ. of Cal., 591 U.S. 1, 16 (2020) (quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009)). Instead, it should "assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Id. (internal citation and quotation marks omitted). "While this is a highly deferential standard of review, it is not a rubber stamp." NLRB v. Beverly Enters.-Mass., Inc., 174 F.3d 13, 24 (1st Cir. 1999) (quotations and quotation marks omitted). Therefore, "[a]lthough 'the ultimate standard of review is a narrow one,' the court must undertake 'a thorough, probing, in-depth review' and a 'searching and careful' inquiry into the [administrative] record." Id. (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971).

## V.      Discussion

The APA provides for judicial review of "final agency action[s] for which there is no other adequate remedy in a court." 5 U.S.C. § 704. This review extends to final agency actions regarding "both procedure and substance." Union of Concerned Scientists v. Wheeler, 954 F.3d 11, 19 (1st Cir. 2020). Here, the parties do not appear to dispute that the IFR is a final agency action. See Beverly Enters. v. Herman, 50 F. Supp. 2d 7, 17 (D.D.C. 1999) (concluding interim final rule was final agency action subject to challenge under the APA); see also O.A. v. Trump, 404 F. Supp. 3d 109, 132 n.8 (D.D.C. 2019) (ruling that interim final rule was final agency action even though agency had invited public comment regarding same); Mack Trucks, Inc. v. EPA, 682 F.3d 87, 95 (D.C. Cir. 2012) (reviewing and vacating interim final rule even though agency was "in the process

of promulgating a final rule"). The Court, therefore, proceeds to the merits of Plaintiffs' APA challenges to the IFR.

Plaintiffs move for summary judgment on the grounds that: (1) the IFR's substance is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A); (2) the IFR's effective date is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A); and (3) the IFR is procedurally improper in violation of 5 U.S.C. § 706(2)(D) because the FLRA did not satisfy notice-and-comment requirements. D. 1 ¶¶ 82-110; see D. 21 at 20-33. Defendants cross-move for summary judgment on the grounds that: (1) the IFR is not arbitrary and capricious and (2) the IFR was not subject to notice-and-comment requirements but, even if it were, it satisfied them. D. 29 at 18-39.

### A.    Arbitrary-and-Capricious Challenges

Under the APA, "an agency rule [is] arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." FCC v. Prometheus Radio Project, 592 U.S. 414, 423 (2021). "This means that the agency's reasons 'must be set forth with such clarity as to be understandable.'" California v. U.S. Dep't of Educ., 132 F.4th 92, 98 (1st Cir. 2025) (quoting SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)). In determining whether a rule is arbitrary and capricious, the Court "may consider only the agency's explanation given at the time the relevant decision was made, as opposed to its post hoc rationale." Melone v. Coit, 100 F.4th 21, 31 (1st Cir. 2024) (citing SEC v. Chenery Corp., 318 U.S. 80, 87-88 (1943)).

11

Where, as here, an agency changes its "existing policies," an agency must also "provide a reasoned explanation for the change."  Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221 (2016).  This requires, at a minimum, that the agency "'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'"  Id. (quoting Fox Television, 556 U.S. at 515).  The agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better."  Fox Television, 556 U.S. at 515 (emphasis in original).  But where the agency's new position "rests upon factual findings that contradict those which underlay [the] prior" position or "has engendered serious reliance interests," however, the agency may be required to provide a "more detailed justification."  Id.  Such justification "must fairly account for any benefits lost by modifying existing rules, as well as any advantages expected to be gained through the adoption of updated rules."  Citizens Awareness Network, Inc. v. United States, 391 F.3d 338, 352 (1st Cir. 2004).

The FLRA argues, as a preliminary matter, that its decisions under the IFR are not subject to APA review because they are "discretionary procedural decisions" and that the Court must, therefore, defer to the agency's determination.  D. 29 at 30-33.  As an initial matter, that Congress granted the FLRA discretion to delegate authority to make determinations under 5 U.S.C. § 7105(e)(1) to regional directors, does not necessarily make the IFR a procedural rule.[3]  "A

---

[3] The FLRA's suggestion that several out-of-Circuit decisions support the proposition that regulations delegating an agency's authority are invariably procedural rules, D. 29 at 18-19 (citing RSM, Inc. v. Buckles, 254 F.3d 61, 69 (4th Cir. 2001); U.S. v. Am. Prod. Indus., Inc., 58 F.3d 404, 407 (9th Cir. 1995); U.S. v. Saunders, 951 F.2d 1065, 1068 (9th Cir. 1991); Lonsdale v. United States, 919 F.2d 1440, 1446 (10th Cir. 1990); Am. Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1047 (D.C. Cir. 1987)), reads this caselaw too broadly.  That a regulation involves a delegation does not

12

procedural rule is one which 'do[es] not [it]self alter the rights or interests of the parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency.'" Stauffer v. Internal Revenue Serv., 285 F. Supp. 3d 474, 483 (D. Mass. 2017) (alterations in original) (internal citation omitted). "However, 'the label an agency places on a rule is not dispositive' as to whether a rule" is procedural or substantive. Castellini v. Lappin, 365 F. Supp. 2d 197, 202 (D. Mass. 2005) (quoting Truckers United for Safety v. Fed. Highway Admin., 139 F.3d 934, 939 (D.C. Cir. 1998)). Here, given that the IFR not only revokes the FLRA's prior delegation of authority but also eliminates the appeals process under 5 U.S.C. § 7105(f), the Court is not convinced that the IFR is wholly procedural. See Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Nat'l Lab. Rels. Bd., 57 F.4th 1023, 1038-41 (D.C. Cir. 2023) ("AFL-CO") (holding that a provision in a NLRB rule delaying certification of union elections was substantive because it "'trenche[d] on substantial private rights and interests'" by "directly curtail[ing] the protective effect on employees of the rights and interests that flow from the election of a representative of their choosing," and "suspend[ing] the attachment of an employer's legal duty to bargain with a union that has won an election," thereby "shift[ing] the parties' substantive burdens during the post-election period" and "alter[ing] . . . the timetable for exercising a substantive right itself"); Nat'l Ass'n of Home Health Agencies v. Schweiker, 690 F.2d 932, 949 (D.C. Cir. 1982) (concluding that agency's discretionary delegation of authority to process reimbursements to regional intermediaries was a substantive rule because it "substantially affect[ed] the rights and

_____

invariably qualify said regulation as procedural, nor does it obviate a court's need to "inquir[e] more broadly whether the agency action [] encodes a substantive value judgment or puts a stamp of approval or disapproval on a given type of behavior." Am. Hosp. Ass'n, 834 F.2d at 1047; accord Stauffer, 285 F. Supp. 3d at 483-84. As such, although certain of these cases held that the delegation regulation at-issue was procedural, they did not do so based upon a bright-line rule, but rather upon the conclusion that the regulation "did not alter any of plaintiffs' substantive rights." RSM, 254 F.3d at 69; see Saunders, 951 F.2d at 1068; Lonsdale, 919 F.2d at 1446.

13

interests of freestanding HHAs" as for sixteen years under the prior regulation, HHAs had "a qualified right to choose" between having their reimbursement determined by either the Secretary or the regional intermediaries and the new regulation "foreclosed that option, eliminating the qualified right"); cf. James V. Hurson Assocs., Inc. v. Glickman, 229 F.3d 277, 282 (D.C. Cir. 2000) (distinguishing procedural rule from that in [Home Health Agencies] because "[u]nlike the rule challenged in [Home Health Agencies], which both eliminated claimants' access to the HHS Secretary and transferred his authority to issue reimbursements to other agency employees," the USDA's rule eliminating face-to-face review of requests for approval of food labeling "does not change the agency personnel who will be responsible for reviewing proposed labels," but rather changed the format of the meetings); Home Health Agencies, 690 F.2d at 950 n.103 (noting that a prior case considering agency rule requiring audits to be performed by private auditors in lieu of agency was distinguishable as plaintiffs there "never had the freedom to choose who audited them"). It is also notable that the FLRA has previously engaged in notice-and-comment rulemaking to delegate its authority to regional directors under 5 U.S.C. § 7105(e)(1), which is required only for substantive rules. 48 FR 28814; D. 12 ¶ 7; D. 30 ¶ 7; see Castellini, 365 F. Supp. 2d at 203 (noting that agency previously used notice-and-comment rulemaking in court's analysis of whether rule is substantive).

But even assuming *arguendo* that the IFR is procedural and FLRA's determination around "when" to make these changes to its delegation rules thus "warrants a high degree of deference," Citizens Awareness Network, 391 F.3d at 352 (emphasis in original); see Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 543-44 (1978), the FLRA "overstate[s] the deference afforded to an agency's policy choices," Ass'n of Am. Universities v. Dep't of Def., 806 F. Supp. 3d 79, 108 (D. Mass. 2025). As explained above, "the APA provides for judicial

14

review of both procedure and substance." Wheeler, 954 F.3d at 19; see Marasco & Nesselbush, LLP v. Collins, 6 F.4th 150, 169 (1st Cir. 2021) (noting that "even if the rule is not subject to the notice-and-comment process, it is subject to review under the arbitrary and capricious standard") (citing Perez v. Mortg. Bankers Ass'n, 575 U.S. 92, 105-06 (2015)). Any deference afforded to agencies for procedural rules, therefore, neither "exempt[s] from judicial review procedural requirements that the agency does choose to impose," Stauffer, 285 F. Supp. 3d at 483, nor "make[s] arbitrary and capricious review 'toothless,'" Ass'n of Am. Universities, 806 F. Supp. 3d at 108 (quoting Louisiana v. U.S. Dep't of Energy, 90 F.4th 461, 469-70 (5th Cir. 2024) (internal citation omitted)). Indeed, the Supreme Court has "frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner," State Farm, 463 U.S. at 48-49 (collecting cases), and has set aside policies where such explanation did not satisfy arbitrary-and-capricious review, see, e.g., id. at 30-51; Regents, 591 U.S. at 35-36 (concluding that agency's "fail[ure] to consider [reliance interests]. . . raises doubts about whether the agency appreciated the scope of its discretion or exercised that discretion in a reasonable manner").

As such, even assuming the IFR can fairly be construed as procedural, the Court must still consider "the how of the [FLRA]'s new rules; that is, the question whether the [FLRA] acted arbitrarily in making a specific set of changes in order to achieve its goal." Citizens Awareness Network, 391 F.3d at 352 (emphasis in original). This analysis incorporates standard principles of arbitrary-and-capricious review. Id. at 351-52 (citing State Farm, 463 U.S. at 43-44); see Stauffer, 285 F. Supp. 3d at 483-84 (applying arbitrary-and-capricious review to procedural rule); AFL-CO, 57 F.4th at 1046-48 (applying arbitrary-and-capricious review to rule "as a whole" with both procedural and substantive provisions). The Court applies these principles to the substance of the IFR and its effective date.

15

*1.    Substance of IFR*

"The focal point of APA review is the existing administrative record." Atieh v. Riordan, 727 F.3d 73, 76 (1st Cir. 2013). Here, it is undisputed that the entirety of the administrative record "consists solely of" the interim final rule itself and the amendment, both of which rely exclusively upon the explanation provided in the interim final rule's preamble. D. 12 ¶ 23; D. 30 ¶ 23; Tr. of May 21, 2026 Mot. Hr'g ("MSJ Tr."), D. 39 at 4. As explained below, the Court's review of these two documents leads to the conclusion that the IFR is arbitrary and capricious because the FLRA both failed to provide adequate reasoning for revoking its prior delegation of authority to regional directors and failed to consider reliance interests in the prior delegation system. See Ass'n of Am. Universities, 806 F. Supp. 3d at 107 (noting that "[t]he paucity of the administrative record—consisting of two press releases . . . underscores the obviousness that this Policy was instituted without any real consideration of its effect"); Drs. for Am. v. Off. of Pers. Mgmt., 793 F. Supp. 3d 112, 144 (D.D.C. 2025) (noting that the "scant administrative record" was a "clear" indication that an agency's rules "w[ere not] the product of reasoned decisionmaking").

As to the substance, Plaintiffs challenge two aspects of the IFR: (1) the revocation of delegated authority to regional directors to determine matters under 5 U.S.C. § 7105(e)(1) and (2) the resulting elimination of the appeals process under 5 U.S.C. § 7105(f) (collectively, the "delegation revocation provisions"). D. 21 at 32 n.5.[4] In the interim final rule's preamble, the FLRA explains that "[a]fter reexamination of its practices," the FLRA found that its "regulations governing representation matters, merit revision." 91 FR at 13933. As to its decision to revoke its prior delegation to regional directors, the FLRA states that it "envisions a streamlined process in

---

[4] As both parties acknowledge, D. 21 at 32 n.5; D. 29 at 11, Plaintiffs do not challenge the "minor or technical changes" incorporated in the IFR to "correct inadvertent errors and omissions," id. at 13940. The Court's analysis, thus, is cabined to the IFR's delegation revocation provisions.

which representation matters are resolved through the collaborative efforts of the regional offices and the Authority—rather than a strict separation of an initial decision by an [regional director], followed by a possible appeal to, and potentially duplicative decision by, the Authority." Id. Specifically, FLRA explains that the IFR will allow the Authority to review "all issues of importance in representation matters" and "provide parties in most cases with decisions from the Authority on all consequential issues in representation proceedings," "without the parties needing to make their arguments twice, and without the need to file an appeal of an initial decision," except in no-quorum situations. Id. at 13933-34; see D. 37 at 7. As to the impact of this delegation revocation on the appeals process under 5 U.S.C. § 7105(f), the FLRA states that "[b]ecause the Authority will be performing these statutory functions itself . . . an appeals process will no longer be necessary." 91 FR 13934. These explanations do not pass muster under the APA.

a)    <u>Inadequate Reasoning</u>

First, the FLRA falls short of providing the reasoned explanation needed for revoking the prior delegation system that has been in place since 1983. See <u>Encino Motorcars</u>, 579 U.S. at 221. For the past forty-three years, the FLRA has taken the position that delegating the determination of representation matters to regional directors would "provide for the expeditious processing and determination of representation matters." 48 FR at 28814. In promulgating the IFR, the FLRA adopted the opposite view. 91 FR at 13933-34. As Plaintiffs note, D. 21 at 23-24, nowhere in the administrative record does the FLRA consider, much less "cast doubt" on, its previous rationale for delegating authority to the regional directors to decide representation matters, i.e., that a delegation system would be more efficient than the Authority deciding these matters itself. See <u>State Farm</u>, 463 U.S. at 47; <u>Regents</u>, 591 U.S. at 28-29; see also <u>Massachusetts v. Nat'l Institutes of Health</u>, 770 F. Supp. 3d 277, 306 (D. Mass. 2025) (concluding that agency's explanation for changing audit

17

system is insufficient where agency "fails to explain the inadequacy of the existing audit system"), aff'd, 164 F.4th 1 (1st Cir. 2026).  There is "no indication in the record that anyone at [the FLRA] performed any analysis to support [its] conclusion that" the previous delegation system was not efficient or that the new system under the IFR would be streamlined.  See Am. Pub. Health Ass'n v. Nat'l Insts. of Health, 145 F.4th 39, 54 (1st Cir. 2025) (affirming district court's arbitrary-and-capricious conclusion in denying government's motion to stay); see also Doe v. Noem, 817 F. Supp. 3d 27, 50 (D. Mass. 2026) (concluding plaintiffs were likely to succeed on their APA challenge to agency rule where agency "used unsupported allegations regarding insufficient vetting and fraud of current parolees as countervailing factors").  The FLRA cites no evidence to support its reasoning or assumptions regarding any purported shortcomings.  See Rhode Island v. Trump, 781 F. Supp. 3d 25, 46 (D.R.I. 2025) (noting that "conclusory explanations, 'devoid of data or any independent explanation, [are] grossly insufficient and fall[] far short of reasoned analysis'") (alterations in original; internal citation omitted), appeal dismissed, No. 25-1477, 2025 WL 3459538 (1st Cir. Nov. 25, 2025).  Nor does the FLRA provide the "reasoned explanation [] needed for disregarding [the] facts and circumstances that underlay or were engendered by the prior policy," namely the need for efficient processing and determinations in representation matters.  Fox Television, 556 U.S. at 516.  The FLRA's "'conclusory statements will not do [as] an "agency's statement must be one of reasoning."'"  Bowser v. Noem, No. 26-cv-10382-AK, 2026 WL 555624, at *7 (D. Mass. Feb. 27, 2026) (emphasis in original) (quoting Amerijet Intern, Inc. v. Pistole, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (internal citation omitted)); see Ass'n of Am. Universities v. Dep't of Energy, 789 F. Supp. 3d 118, 140-41 (D. Mass. 2025) (concluding funding rule was arbitrary and capricious where agency neither "provide[d] [a] reasoned explanation for how or why [it] concluded that indirect cost rates exceeding 15 percent do not constitute an appropriate or efficient use of [its]

18

funds, nor [] explain[ed] how limiting funding for indirect costs would lead to that money being put to more appropriate and efficient uses"), appeal dismissed, No. 25-1727, 2026 WL 841632 (1st Cir. Mar. 16, 2026).

The FLRA contends that "Plaintiffs' arguments that the IFR was arbitrary and capricious because it failed to address potential inefficiencies [] both miss the point and are speculative" because the IFR "concern not only speed, but also authoritativeness" and Plaintiffs can only speculate about "the impact that the IFR changes will have on the Authority's caseloads and case processing times." D. 29 at 34-35. This argument, however, only underscores another failure in the FLRA's explanation for the IFR: that the FLRA "entirely failed to consider an important aspect of the problem." State Farm, 463 U.S. at 43. Efficient processing and determinations for representation matters was the FLRA's chief consideration in adopting the 1983 delegation rules. 48 FR at 28814. The FLRA provides no discussion of any changes between the time it issued the 1983 delegation rules and its adoption of the IFR that would suggest delegation is no longer the most efficient means for accomplishing these goals or that efficiency is no longer an important consideration. See NLRB v. Lily Transp. Corp., 853 F.3d 31, 36 (1st Cir. 2017) (Souter, J.) (noting that "an about-face on a rule owing to facts changed from those underlying the prior view requires that the new facts be addressed explicitly by reasoned explanation for the change of direction"); Encino Motorcars, 579 U.S. at 221 (noting that "an '[u]nexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice'") (alteration in original; internal citation omitted). Nor does the FLRA "fairly account for any benefits lost by modifying existing rules." Citizens Awareness Network, 391 F.3d at 352. Plaintiffs argue that changing from a regulatory system under which multiple regional directors make determinations under 5 U.S.C. § 7105(e)(1) to one in which only a unitary body may do so

"will necessarily" cause delays in processing and adjudicating representation matters.  D. 21 at 17. The administrative record is silent on this issue.  That the FLRA fails to consider the IFR's impact on these two areas is, in and of itself, arbitrary and capricious.  See Regents, 591 U.S. at 30; State Farm, 463 U.S. at 51.

Although "[i]n the realm of procedure, [] agencies are presumed to have special competence and, accordingly, are held to less exacting standards of explication . . . [courts] are not willing to ignore matters that are common knowledge."  Citizens Awareness Network, 391 F.3d at 353; see Dep't of Com. v. New York, 588 U.S. 752, 785 (2019) (noting that courts engaged in arbitrary-and-capricious review "'are not required to exhibit a naiveté from which ordinary citizens are free'") (internal citation omitted).  Here, it is a matter of "common knowledge" is that changing from a system in which multiple regional directors are deciding matters to one in which the Authority must reach a collective decision on all representation matters will increase not just the Authority's caseload, but the processing and adjudication times for representation matters as well.  Cf. Citizens Awareness Network, 391 F.3d at 353 (concluding that agency's "thin" explanation that "eliminating traditional discovery will shorten hearings and conserve resources" did not make rule arbitrary or capricious as it is "common knowledge to courts of law" that "[d]iscovery . . . is both time-consuming and costly" and "it can[not] reasonably be questioned that the replacement of discovery . . . will make [] hearings faster and less expensive").  The FLRA has provided neither an explanation nor data to suggest otherwise.  Nor did the FLRA purport to rely upon its expertise in the interim final rule in reaching the conclusion that revoking delegation will streamline proceedings.  See Nat'l Classification Comm. v. United States, 779 F.2d 687, 695 (D.C. Cir. 1985) (noting that while "an agency may provide the factual predicate for a finding by taking 'official notice' of matters of common knowledge . . . and of matters known to the agency through its

20

cumulative experience and consequent expertise . . . [t]he agency cannot [] rely on data known only to the agency") (internal citations omitted).  The Court cannot conclude, therefore, that FLRA's "path" to streamlining the processing and adjudication of representation matters by moving from multiple decision-makers to a single, unitary decision-maker "may be reasonably discerned" from the explanation provided on this record.  Fox Television, 556 U.S. at 513-14 (internal citation and quotation marks omitted).  This is compounded by the fact that the FLRA has not settled on structures for how the Authority will handle an increased caseload, or how pending matters will be handled, as noted by the dissent on the interim final rule.  See 91 FR at 13949.  Without any acknowledgement or consideration of these important aspects of revoking delegation, the FLRA's "proffered explanation fails to demonstrate that the agency fully considered its new course."  Citizens Awareness Network, 391 F.3d at 351.

Moreover, certain aspects of FLRA's explanation also fail to grapple with the relevant facts and run counter to the evidence before the agency.  See State Farm, 463 U.S. at 43.  The FLRA explains that the IFR will "streamline[]" decisionmaking in representation matters because it will eliminate the need for parties to "make their arguments twice," "file an appeal of an initial decision" and receive a "potentially duplicative" decision from the Authority.  91 FR at 13933-34.  As Plaintiffs point out, however, the FLRA's own data shows that only approximately two percent of representation cases were appealed to the Authority in 2024 and 2025, respectively.  D. 21 at 13; Clarke Decl., D. 20 at 27, 29.  This data also reveals that in recent years, for one example, the Authority has not met its performance measures for the "average age of representation cases pending before the Authority," while regional directors met its 365-day performance measures for "percentage of representation cases resolved by the OGC through withdrawal, election, or issuance of a Decision and Order within 365 days of the filing of a petition."  Id. at 35, 29.  Plaintiffs contend

that this data establishes that appeals and multiple proceedings in a case were a rarity under the prior delegation system, suggests that the previous system was already "streamlined" and demonstrates that revoking delegation to regional directors and requiring the Authority to decide all representation matters will decrease efficiency. D. 21 at 24-25. Additionally, as the FLRA notes in the interim final rule, review on appeal is "limited to the grounds set forth at 5 CFR 2422.31(c)." 91 FR at 13933. It is unclear from the record, and the FLRA provides no explanation addressing, how initial decisions from regional directors are duplicative of those of the Authority where "the scope of the Authority's review is limited" to the narrow issues under 5 CFR 2422.31(c). Id. While the FLRA could have, of course, reached different conclusions based on this data, it was still required to "examine the relevant data and articulate a satisfactory explanation for its action." State Farm, 463 U.S. at 43. "Generally, one aspect of that explanation would be a justification for [revoking the prior delegation system] before engaging in a search for further evidence." Id. at 52. There is no evidence in the administrative record that the FLRA did either here. The FLRA's post-hoc discussion of same, D. 29 at 34, including its reference to a Task Force on efficiency that is not mentioned in the administrative record, MSJ Tr., D. 39 at 23; D. 30 ¶¶ 18-19, is no substitute. See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 37 F.4th 746, 761 (1st Cir. 2022). "This failure to grapple with relevant factors and facts" too is arbitrary and capricious, particularly "in light of the drastic change from" the prior delegation system. Massachusetts, 770 F. Supp. 3d at 307.

The FLRA argues that "the Authority explained that not only efficiency but also the authoritativeness of representation decisions were the reasons that it revisited the delegation and issued the IFR." D. 29 at 34. In its briefing, the FLRA suggests that the IFR "will lead to a more robust jurisprudence in the area of representation law." Id. At oral argument, the FLRA further contended that only decisions from the Authority are precedential and thus, by having the Authority

make all determinations under 5 U.S.C. § 7105(e)(1) instead of regional directors, the Authority can issue precedential decisions on issues that it might not otherwise address. MSJ Tr., D. 39 at 28-30. This focus on issuing decisions with precedential weight, however, is not one of "the reasons [the FLRA] provided at the time of its decision" for revoking delegation from regional directors. See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 37 F.4th at 761. The interim final rule states only that the IRF will "provide parties in most cases with decisions from the Authority on all consequential issues in representation proceedings" and that "parties will benefit from review by the Authority on all issues of importance in representation matters." 91 FR at 13933. The record is devoid of any discussion of differences in authoritativeness or precedential weight between decisions issued by regional directors and those issued by the Authority. Nor does the record suggest that regional directors' decisions under the prior delegation system lacked these qualities. At best, these statements invite the Court and the public "to 'guess at the theory underlying the agency's action'" as it relates to the authoritativeness of decisions. California, 132 F.4th at 98 (quoting Chenery, 332 U.S. at 196-97). This guesswork "'will not do,' because 'a court [cannot] be expected to chisel that which must be precise from what the agency has left vague and indecisive,'" id. (alteration in original) (quoting Chenery, 332 U.S. at 196-97), and the FLRA "cannot rely on post-hoc rationalizations developed and presented during litigation" to bolster its prior explanation, In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 37 F.4th at 761.

But even assuming that this explanation can fairly be construed as an "elaborat[ion]" on the grounds the FLRA provided in the interim final rule, see id. (internal citation omitted), it still does not provide a reasoned explanation for revoking delegation. As noted above, under the prior delegation system, decisions and orders of regional directors "become the action of the Authority" unless a party filed a timely application for review and the Authority granted said request. 48 FR

23

at 40192; see 48 FR 40189. As approximately 98 percent of representation matters were decided by regional directors without appeal, Clarke Decl., D. 20 at 29, the vast majority of representation matters were already authoritative under the previous scheme. As the FLRA failed to consider this data in promulgating the IFR, the Court "cannot say whether the [FLRA] properly considered all 'relevant data,'" California, 132 F.4th at 99 (quoting State Farm, 463 U.S. at 43). That is, given the reality that virtually all decisions were authoritative under the prior delegation system, the FLRA's authoritative explanation "[falls] short of the agency's duty to explain why it deemed it necessary to overrule its previous position." Encino Motorcars, 579 U.S. at 222.

Further, "the record fails to explain how [the FLRA's] supposed justifications connect to [the IFR]." Ass'n of Am. Universities, 806 F. Supp. 3d at 114. Although the stated focus of the IFR is on having the Authority decide "consequential issues" and "issues of importance" in the first instance, 91 FR at 13933, FLRA's counsel represented that the 98 percentage of cases that regional directors solely decided under the prior system were "routine, easy cases" that "won't change if there's a deliberative body or not" and that the Authority should not address, MSJ Tr., D. 39 at 20, while the two percent of "contested" cases that reached the Authority on appeal are the "issues of important consequence" and "the more consequential cases" that were the "focus[]" of the IFR, id. at 20-21. This explanation does not show that the FLRA's decision to have the Authority decide all matters under 5 U.S.C. § 7105(e)(1), including the 98 percent of cases that are the "routine, easy cases" and that the FLRA does not believe it should address, "constitute[s] a rational means for achieving [the FLRA's] stated objective." Citizens Awareness Network, 391 F.3d at 352; see State Farm, 463 U.S. at 43. Further, the IFR's elimination of the appeals process removes the mechanism by which the FLRA identified the "contested" cases which are the purported target of the IFR's new adjudication system, i.e., the cases that were appealed. MSJ Tr., D. 39 at 20. The Court

24

"cannot ignore the disconnect between the decision made" to subject all representation cases to review by the Authority in the first instance and "the explanation given" by the FLRA for this change.  See New York, 588 U.S. at 785.

The FLRA also contends that "leveraging collaboration" between regional directors and the Authority was a justification for the IFR.  D. 37 at 7; see D. 29 at 33-34.  Although the FLRA states that it "envision[s]" a process where "matters are resolved through the collaborative efforts" and that "collective insights and experience of the regional offices and the Authority will shape the decisions that parties receive" under the new system, 91 FR at 13933-34, "[t]hese statements express goals and conclusions, not reasoning."  Ass'n of Am. Universities v. Nat'l Sci. Found., 788 F. Supp. 3d 106, 135 (D. Mass. 2025).  "Statements of aspirational goals . . . are not the same as reasoned explanations for why an action is chosen or how the chosen action will effectuate the stated goals."  Ass'n of Am. Universities, 789 F. Supp. 3d at 140.  Rather, an agency must "explain how [it] concluded [an action] will further the objectives it asserts."  Ass'n of Am. Universities, 788 F. Supp. 3d at 135.  Here, it is unclear from the record how the FLRA concluded that revoking its prior delegation of authority to regional directors will foster collaboration between the Authority and regional directors.  See id., 788 F. Supp. 3d at 135-37 (concluding that policy is arbitrary and capricious where agency stated that policy "supports" efficiency, consistency and effectiveness but failed to explain how policy achieved these objectives).  Although the preamble of the interim final rule states that the Authority will make determinations under 5 U.S.C. § 7105(e)(1) "after consultation with the regional offices" and "will consider the views of the regional offices when making decisions," 91 FR at 13933-34, neither the IFR itself nor the administrative record "explains what this means or how it will work," Ass'n of Am. Universities, 806 F. Supp. 3d at 116 (emphasis in original), and these concepts of collaboration, whether as mandatory components of

25

the Authority's decisionmaking or otherwise, are absent from the revisions to the FLRA's delegation regulations themselves, see Massachusetts, 770 F. Supp. 3d at 305; 91 FR at 13934-52.

Moreover, "when an agency rescinds a prior policy its reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the existing [policy].'"  Regents, 591 U.S. at 30 (alterations in original) (quoting State Farm, 463 U.S. at 51).  Here, that would include consideration of whether regional directors and the Authority could collaborate on representation matters in the same manner explained in the interim final rule without revoking regional directors' prior delegation of authority to decide said matters.  "At the very least this alternative way of achieving th[is] objective[] of the [IFR] should have been addressed and adequate reasons given for its abandonment."  State Farm, 463 U.S. at 48.  Yet, the record does not indicate that the FLRA "even consider[ed] the possibility in its [] rulemaking," id., much less that it "sensibly rejected other options . . . including the option of maintaining the status quo," Citizens Awareness Network, 391 F.3d at 352.

For the reasons stated above, the IFR's delegation revocation provisions are arbitrary and capricious because the FLRA fails to provide adequate reasoning to support them.

                    b)        Failure to Consider Reliance Interests

Second, the IFR's delegation revocation provisions are also arbitrary and capricious because the FLRA failed to consider reliance interests in the prior delegation system.  "When an agency changes course, as [FLRA] did here, it must 'be cognizant that longstanding policies may have "engendered serious reliance interests that must be taken into account."'"  Regents, 591 U.S. at 30 (quoting Encino Motorcars, 579 U.S. at 222 (quoting Fox Television, 556 U.S. at 515)).  Here, as the IFR revokes delegation rules that have been in place for forty-three years, the FLRA "was required to assess whether there were reliance interests, determine whether they were significant,

26

and weigh any such interests against competing policy concerns." Id. at 33 (emphasis omitted). Under the prior delegation system, the vast majority of cases were decided by regional directors without input from the Authority. Clark Decl., D. 20 at 27, 29. Plaintiffs contend that they relied upon "the expertise and professionalism of Regional Directors during representation proceedings," D. 12 ¶ 40, as well as regional directors' timely processing of representation petitions under the prior system, id. ¶¶ 33-34, and attest that the timely processing of election petitions is "crucial" for Plaintiffs to obtain exclusive representation status and that delays to their adjudication harm unions' organizing efforts and, thus, their members' ability to enjoy protections afforded under the FSLMRS. D. 12 ¶¶ 33-34. Plaintiffs argue that the new system, which requires the Authority to handle the hundreds of representation petitions filed annually in lieu of multiple regional directors, will result in "significant delays in the vast run of petitions," D. 21 at 31; D. 32 at 16. Such delays include the resolution of the pending petitions that Plaintiffs previously filed under the prior delegation system. D. 12 ¶¶ 30-31; D. 30 ¶¶ 30-31.

The FLRA rejects these claimed interests in its briefing. D. 29 at 37-39; D. 30 ¶¶ 33-34. Yet, the FLRA was required to consider whether parties had reliance interests "in the first instance" not during the course of this litigation, but rather when it promulgated the IFR. Regents, 591 U.S. at 31; see In re Fin. Oversight & Mgmt. Bd. for P.R., 37 F.4th at 761. There is no indication from the record that the FLRA did so. Although the FLRA acknowledges "the [] insights and experience of the regional offices," 91 FR at 13934, this acknowledgment does not demonstrate that the FLRA considered whether "any benefits" of their expertise would be "lost by modifying existing rules." Citizens Awareness Network, 391 F.3d at 352; see Am. Hosp. Ass'n v. Kennedy, 164 F.4th 28, 33-34 (1st Cir. 2026) (concluding agency failed to adequately consider reliance interests in prior regulation where record showed that agency acknowledged but did not consider the impact of the

27

change); Am. Hosp. Ass'n v. Kennedy, 820 F. Supp. 3d 30, 43 (D. Me. 2025) (noting that "[n]oting a change in a program's operation is not the same as recognizing that the change will impact [] entities in detrimental ways"). Further, there is no indication from the record that the FLRA considered parties' reliance interests in timely adjudication under the prior regime. See Bowser, 2026 WL 555624, at *8 (concluding agency acted arbitrarily in failing to consider plaintiffs' reliance interests in "timely adjudication of" immigration benefit applications); Rhode Island, 781 F. Supp. 3d at 46-47 (similar); see also Doe v. Noem, 784 F. Supp. 3d 437, 450, 465 (D. Mass. 2025) (concluding that new rule changing processing procedure was arbitrary and capricious where agency "gave no consideration of the reliance interests of individuals" already involved in the processing), appeal dismissed, No. 25-1715, 2025 WL 4666067 (1st Cir. Nov. 5, 2025). "Furthermore, it does not evidence that [the FLRA] weighed any reliance interest against the competing [] policy concern or the [] approach favored" in the IFR. Am. Hosp. Ass'n, 820 F. Supp. 3d at 43. The FLRA's suggestion otherwise, see D. 37 at 6, is unsupported by the record, see In re Fin. Oversight & Mgmt. Bd. for P.R., 37 F.4th at 761; Bowser, 2026 WL 555624, at *8. Accordingly, the record does not show that the FLRA adequately considered parties' reliance interests in the prior delegation scheme.

Additionally, the FLRA failed to address whether there was "legitimate reliance" on the appeals process under 5 U.S.C. § 7105(f). Smiley v. Citibank (South Dakota), N. A., 517 U.S. 735, 742 (1996). Under this section, "any interested person" could seek review from the Authority of any 5 U.S.C. § 7105(e)(1) decision made by a regional director within 60 days. 5 U.S.C. § 7105(f). As virtually all determinations under 5 U.S.C. § 7105(e)(1) were made by regional directors under the prior delegation scheme, parties had the option to seek review of virtually all 5 U.S.C. § 7105(e)(1) determinations before the IFR became effective. Now, as the IFR ceases all delegation

of authority to regional directors to make these reviewable determinations, the IFR necessarily eliminates this option to seek review within the statutory scheme. Review of these determinations is otherwise "not subject to collateral or direct challenge to the [regional director] or the Authority." 91 FR at 13935 (revising 5 C.F.R. §§ 2422.9 and 2422.10). Additionally, the FSLMRS precludes from judicial review any "order" arising out of a representation petition "under . . . section 7112 . . . involving an appropriate unit determination," 5 U.S.C. § 7123(a)(2), which, under the IFR's new scheme, render these decisions, which were previously subject to the review procedures under 5 U.S.C. § 7105(f), see 5 U.S.C. §§ 7105(e)(1)(A), 7105(f), statutorily and judicially unreviewable. D. 21 at 19.

The FLRA contends that Plaintiffs do not have any reliance interests in the appeals process under 5 U.S.C. § 7105(f) because discretionary review was not required under the prior system and appeals were never "guaranteed," D. 29 at 23; see D. 37 at 3-4, but again, this post-hoc contention does not satisfy the FLRA's obligations under the APA. Regents, 591 U.S. at 31. Nor is this contention persuasive. In Centro Legal, a district court concluded that a procedural rule from the Executive Office for Immigration Review ("EOIR") that, as relevant here, limited the "longstanding authority" of immigration judges and the BIA to reopen or reconsider a noncitizen's removal proceedings *sua sponte* "in exceptional circumstances" was arbitrary and capricious in part because it failed to adequately consider reliance interests. Centro Legal de la Raza v. Exec. Off. for Immigr. Rev., 524 F. Supp. 3d 919, 940-41 (N.D. Cal. 2021). The court rejected the EOIR's argument that because "an alien has no right to *sua sponte* reopening or even to file such a cognizable motion" and the changes under the rule "[t]hus, . . . do not remove any 'vested rights' from aliens," the EOIR was not required to assess reliance interests. Id. at 970 (internal citation and quotation marks omitted). As the court noted, "[t]he government's contention that the agency was free to dismiss

29

any reliance interests because there is no right to discretionary *sua sponte* reopening is akin to the government's losing argument in <u>Regents</u>." <u>Id.</u> at 971 (citing <u>Regents</u>, 591 U.S. at 30-33).  In both <u>Centro Legal</u> and <u>Regents</u>, the courts concluded that the fact that reliance interests in a prior rule did not stem from a vested right granted by said rule did not absolve the agency of the need to consider reliance interests.  <u>Id.</u>; <u>Regents</u>, 591 U.S. at 30-31.  Accordingly, in both cases, the courts held that the agency's failure to do so rendered the rule arbitrary and capricious.  <u>Centro Legal</u>, 524 at 970-71 (addressing the matter in the context of a motion for preliminary injunction; <u>Regents</u>, 591 U.S. at 30-33 (concluding that agency action was arbitrary and capricious).

Similarly, here, the IFR's elimination of the 5 U.S.C. § 7105(f) appeals process "foreclose[s] the only avenue of relief" under the FSLMRS for interested persons to address potential errors in 5 U.S.C. § 7105(e)(1) determinations, eliminates parties' ability to seek review of an initial decision and dissolves the prior system of accountability that has been in place since 1983.  <u>See</u> D. 21 at 25-26; <u>Centro Legal</u>, 524 F. Supp. 3d at 971.  This includes for situations which the FLRA previously found to be worthy of review.  <u>See</u> 5 C.F.R. § 2422.31(c) (2012).  Moreover, to the extent the Authority's determinations involve "order[s] under . . . section 7112 . . . involving an appropriate unit determination," they are also precluded from judicial review, 5 U.S.C. § 7123(a)(2).  D. 21 at 19; <u>cf.</u> <u>Citizens Awareness Network</u>, 391 F.3d at 354 (declining to find agency's limitation on cross-examination arbitrary and capricious where "the new rules do not completely do away with cross-examination" but noting that "[h]ad the new rules abolished cross-examination entirely, [the court] might well find the [agency]'s action insupportable").  That "the prior [] regulations only guaranteed one FLRA decision" and that "[t]he prior regulation never required the Authority's discretionary review," D. 29 at 23; <u>see</u> D. 37 at 3, does not absolve the FLRA of the requirement to consider these reliance interests when promulgating the IFR.  <u>Centro Legal</u>, 524 at 970-71; <u>Regents</u>, 591 U.S. at

30

30-33.  While the fact that review was limited and narrow is perhaps "pertinent in considering the strength of any reliance interests . . . that consideration must be undertaken by the agency in the first instance."  Regents, 591 U.S. at 31.

The record here shows that "[t]here was no such consideration in the [IFR]."  Id.  The FLRA states only that "[b]ecause the Authority will be performing the[] [5 U.S.C. § 7105(e)(1)] functions itself, rather than delegating them to the RDs, an appeals process will no longer be necessary under § 7105(f)."  91 FR at 13934.  There is no indication from the record that the FLRA considered the reliance interests that Plaintiffs raise here.  While the FLRA was, of course, under no obligation to conclude that these reliance interests outweighed any particular policy concerns, "[m]aking that difficult decision was the [FLRA]'s job, but the [FLRA] failed to do it."  Regents, 591 U.S. at 32; see Oliveira v. Edlow, No. 25-cv-13228-BEM, 2025 WL 3492110, at *11 (D. Mass. Dec. 4, 2025).[5] Accordingly, the FLRA, too, did not adequately consider reliance interests in the appeals process.

For the above reasons, the IFR's delegation revocation provisions are also arbitrary and capricious because the FLRA failed to adequately consider reliance interests in the prior delegation system.

For the aforementioned reasons, the IFR's delegation revocation provisions must be set aside on the ground that they are substantively arbitrary and capricious.  See 5 U.S.C. § 706(2)(A).

---

[5] The FLRA's reliance on Vermont Yankee, D. 37 at 4, repeats the same misapprehension as to that decision as did the agency in State Farm.  Vermont Yankee stands for the principle that "a court may not impose additional procedural requirements upon an agency," State Farm, 463 U.S. at 50; see Vermont Yankee, 435 U.S at 524.  Similar to the Supreme Court's conclusion in State Farm that NHTSA's rescission of the passive restraint requirement of Standard 208 was arbitrary and capricious, the Court's conclusion that the FLRA's revocation of its prior delegation rules is arbitrary and capricious neither "require[s] [] any specific procedures which [the FLRA] must follow . . . [n]or [] broadly require[s] [the FLRA] to consider all policy alternatives in reaching decision."  State Farm, 463 U.S. at 50-51.  Instead, it recognizes that the FLRA has not satisfied its obligations to provide adequate reasoning and consider reliance interests.  See id.

31

###### 2.    *Effective Date*

As to the IFR's effective date, while the APA requires only that "the final rule go into effect no less than thirty days after the final regulations' publication," Ponce Paramedical Coll., Inc. v. U.S. Dep't of Educ., 858 F. Supp. 303, 313 (D.P.R. 1994) (citing 5 U.S.C. § 553(d)), "this provision merely establishes a minimum period of notice" and "does not authorize the use of an effective date that is arbitrary or unreasonable," Nat'l Ass'n of Indep. Television Producers & Distributors v. Fed. Commc'ns Comm'n, 502 F.2d 249, 254 (2d Cir. 1974).  A rule's effective date can be deemed arbitrary and capricious where it fails to give individuals with reliance interests in the prior rule adequate notice of the impending change and adequate opportunity to plan in accordance with the new rule.  See Louisiana State v. Dep't of Com., 559 F. Supp. 3d 543, 547 n.14 (E.D. La. 2021); see, e.g., Television Producers, 502 F.2d at 253-54 (enjoining rule due to unreasonable effective date); Am. Fed'n of Lab. & Cong. of Indust. Organizations v. Chao, 297 F. Supp. 2d 155, 164-65 (D.D.C. 2003) ("Chao") (same).  On the other hand, "an effective date is reasonable where it allows adequate time for those affected to take appropriate action."  de Guzman v. Napolitano, No. 11-cv-00021, 2011 WL 8186655, at *4 (D. N. Mar. I. Dec. 30, 2011).

Here, although the IFR's April 23, 2026 effective date complied with 5 U.S.C. § 553(d)'s thirty-day notice requirements, that, alone, does not make the effective date "unassailable." Id.  As Plaintiffs note, D. 21 at 29-30, the record reveals neither a reason nor an explanation for the IFR to become effective a mere thirty days after it was published.  Indeed, as the dissenting view on the IFR noted, there was "no need for nearly immediate implementation."  91 FR at 13949.  This is the only word on the IFR's implementation timeline in the administrative record.  While the FLRA's lack of explanation as to the chosen effective date on its own might not qualify as arbitrary and capricious, it is exacerbated by structural gaps in the new processing and adjudication system under

the IFR and the undisputed fact that the FLRA did not engage in notice-and-comment rulemaking prior to publishing the amendment and the interim final rule. D. 12 ¶¶ 20-22; D. 30 ¶¶ 20-22.

With respect to the first point, as the dissent noted, "the draft notice does not contain a detailed description of how representation cases will be processed internally at the FLRA under the new regulations—undoubtedly because [the FLRA is] still in the process of making those determinations." 91 FR at 13949. Despite this noted structural gap, the IFR's effective date affords the FLRA only thirty days to "make the enormous changes necessary," to switch to a processing and adjudication system by which the Authority goes from deciding a handful of petitions a year under narrow review parameters, to deciding multiple issues in the first instance for the hundreds of representation cases filed annually. Chao, 297 F. Supp. 2d at 164; see Clark Decl., D. 20 at 27-29. The FLRA "offers no record support which would justify selection of a brief [one] month transition period" to implement such a system, nor does the agency "offer any substantive explanation" on how this new process will work in its briefing or at oral argument. Chao, 297 F. Supp. 2d at 164 (concluding that seven-week transition period was inadequate for parties to make necessary changes under new rule). The FLRA's post-hoc reference to a 2025 Task Force, which was convened under the prior delegation system and is mentioned nowhere in the administrative record, see MSJ Tr., D. 39 at 23; D. 30 ¶¶ 18-19, does not offer or constitute an explanation for the IFR's effective date.

Nor does the FLRA elucidate how pending cases will be handled in the face of the FLRA's revocation of regional directors' authority to decide matters under 5 U.S.C. § 7105(e)(1). Although the FLRA has taken the position in the present litigation, a position which is indicated nowhere in the administrative record, that the IFR does not affect matters "pending before April 23, 2026," D. 30 ¶ 29, and, as the FLRA notes, administrative rules are generally "not [] construed to have

retroactive effect unless their language requires this result," Landgraf v. USI Film Prods, 511 U.S. 244, 264 (1994), here, the language of the IFR revokes the regional directors' authority to decide matters under 5 U.S.C. § 7105(e)(1).  Absent delegated authority, regional directors cannot issue decisions in representation cases, regardless of whether a case was pending before the IFR took effect.  This revocation, thus, does appear that it will impact cases that were pending when the IFR became effective.   The IFR lacks any guidance on how those cases will now be handled.  In particular, the FLRA does not indicate whether parties that have previously submitted petitions to and participated in representation proceedings before regional directors, as several of the Plaintiffs here have done, D. 12 ¶¶ 29-31, will now need to make their arguments again before the Authority, a result which directly undermines a stated goal of the delegation revocation itself:  eliminating duplicative proceedings.  See 91 FR at 13933; see State Farm, 463 U.S. at 43.  These factors, paired with the dissenting view on the IFR, "strongly indicated that a longer lead time would be desirable." Television Producers, 502 F.2d at 254; see Chao, 297 F. Supp. 2d at 164.

With respect to the second point, the FLRA's failure to engage in notice-and-comment rulemaking prior to the IFR's issuance, use of the interim final rule process and thirty-day implementation period resulted in the IFR becoming effective before the FLRA engaged in any dialogue with the public on these rules.  See 91 FR at 13949.  Indeed, the administrative record does not indicate that the FLRA considered or responded to any public comments before the IFR became effective, see D. 12 ¶ 23; D. 30 ¶ 23, despite the FLRA's representation that the FLRA "accepted comments" on the interim final rule and plans to review said comments before issuing a final rule to supersede the interim final rule, D. 37 at 7.  The record also does not suggest that the public had any advance notice of the upcoming changes to the delegation and appeals regime beyond the thirty-day period after the IFR was published.  See Ginsburg, Decl., D. 14 ¶ 11; Piacsek

Decl., D. 15 ¶ 20; Ronneberg Decl., D. 16 ¶ 23; Sutton Decl., D. 17 ¶ 20; Ury Decl., D. 18 ¶ 14; Wane Decl., D. 19 ¶ 14; Clarke Decl., D. 20 ¶ 34; see also Television Producers, 502 F.2d at 255 (noting that "[h]aving justifiably relied on the [agency]'s prior policy, petitioners are entitled to more opportunity to adjust to the new rule" where "[n]otice of intent partially to reverse this policy came only eight months before the effective date"); cf. Ponce Paramedical Coll., 858 F. Supp. at 313-14 (rejecting APA challenge to rule's 62-day implementation period where plaintiffs had nearly two years notice of impending new rule); de Guzman, 2011 WL 8186655, at *4 (rejecting argument that thirty-day implementation period was arbitrary and capricious where "[t]he public [] realistically had nearly two years of notice to plan and prepare for the implementation of the Final Rule" and the "long notice-and-comment period provided adequate time for employers to familiarize themselves with the proposed rule").  Given the FLRA's representation that it intends to incorporate public comments into its final rules on this issue, this thirty-day turnaround and lack of advance notice does not present a rational course for achieving said goal.  See State Farm, 463 U.S. at 43.  This is particularly true because, unlike the accompanying amendment to the FLRA's proposed 1983 delegation rule, which became effective only when the "final amendments" to the proposed 1983 rule were published after the proposed rule's comment period, 48 FR at 28814; see id. at 28816, here, the amendment, which was published in the federal registry as a "[f]inal [r]ule," 91 FR at 13949, and effectuates the interim final rule's current revisions, went into effect the same day the interim final rule's comment period closed, id. at 13949, 13933.  The amendment's effective date, therefore, all but ensured that public comments would not be considered before the IFR took effect.  Likewise, as the dissenting view notes, the FLRA's use of interim final rulemaking "effectively tells [its] stakeholders that, although [the FLRA] welcome their comments, [it] will not necessarily consider them."  Id. at 13949.

The FLRA "does not present any evidence that it considered th[e]se issues in selecting an [April 23, 2026] effective date," nor does the IFR indicate as much. Louisiana State, 559 F. Supp. 3d at 548. "The [FLRA] therefore appears to have 'entirely failed to consider an important aspect of the problem' when it selected" its effective date. Id. (quoting Texas Oil & Gas Ass'n v. U.S. E.P.A., 161 F.3d 923, 933 (5th Cir. 1998)). Accordingly, the effective date is arbitrary and capricious.

For the aforementioned reasons, the Court concludes that the IFR is invalid because both its substance and its effective date are arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A).[6]

## VI.    Relief

As to relief, Plaintiffs request:  (1) a declaration that "the Interim Final Rule, and to the extent independently effective, the Memorandum Amendment, violates the Administrative Procedure Act and therefore is null and void" and (2) vacatur pursuant to 5 U.S.C. § 706. D. 1 at 24.[7]

"Pursuant to the Declaratory Judgment Act, a federal district court may, '[i]n a case of actual controversy within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration.'" Transpac Marine, LLC v. Yachtinsure Servs., Inc., 655 F. Supp. 3d 18, 28 (D. Mass. 2023) (alteration in original) (quoting 28 U.S.C. § 2201(a)). "[A] district court has 'complete discretion in determining whether and when to entertain'" a claim for declaratory

---

[6] Having concluded that the IFR must be set aside as substantively invalid, the Court need not reach Plaintiffs' separate notice-and-comment challenge, D. 21 at 30-33. See New York v. Trump, 811 F. Supp. 3d 215, 243 n.13 (D. Mass. 2025).

[7] Although Plaintiffs also sought injunctive relief in their complaint, D. 1 at 24, Plaintiffs do not address this request nor advance any arguments as to same in their motion for summary judgment. See generally D. 21. Given that Plaintiffs are entitled to vacatur and declaratory judgment, the Court need not reach this request for injunctive relief. Ass'n of Am. Universities, 806 F. Supp. 3d at 124 (concluding that "a permanent injunction is not necessary here, given the availability of vacatur and declaratory relief").

judgment.  Id. (internal quotation marks omitted) (quoting Zurich Am. Ins. V. Watts Regul. Co., 796 F. Supp. 2d 240, 246 (D. Mass. 2011)).  In accordance with the Court's determination that the IFR is substantively arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) of the APA, the Court grants Plaintiffs' request for declaratory judgment.

As to vacatur, "[w]here, as here, a court determines that an agency action is arbitrary and capricious. . . , the APA authorizes the court to 'hold unlawful and set aside' that action."  New York, 811 F. Supp. 3d at 244 (quoting 5 U.S.C. § 706(2)); see Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys., 603 U.S. 799, 829-30 (2024) (Kavanaugh, J., concurring) (noting that "[t]he text and history of the APA authorize vacatur . . . . [T]o 'set aside' a[n] [agency action] is to vacate it").  Having determined that the IFR's delegation revocation provisions are arbitrary and capricious, the Court concludes that they must be set aside in both the interim final rule and the amendment.  5 U.S.C. § 706(2)(A).

## VII.    Conclusion

For the foregoing reasons, the Court ALLOWS Plaintiffs' motion for summary judgment, D. 11, and DENIES the FLRA's cross-motion for summary judgment, D. 28.

Accordingly, the Court gives the parties until July 6, 2026 to file a jointly proposed final judgment consistent with this Memorandum & Order reflecting the grant of declaratory judgment and vacatur of the IFR.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge

37