**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, ET AL., <br><br> v. <br><br> U.S. FEDERAL LABOR RELATIONS AUTHORITY, | )<br>)<br>)<br>)<br>)   Civil Action Number: 1:26-cv-11747-DJC<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF**
**THE COURT'S GRANT OF DECLARATORY JUDGMENT**
**AND VACATUR OF THE FEDERAL LABOR RELATIONS AUTHORITY'S**
**INTERIM FINAL RULE AND DELEGATION MEMORANDUM**

The Federal Labor Relations Authority ("FLRA") moves for reconsideration of the Court's June 29, 2026 Order granting the Plaintiffs' summary judgment motion. *Am. Fed'n of Gov't Emps. v. FLRA* ("June 29th Order"), No. 26-CV-11747-DJC, 2026 WL 1870987 (D. Mass. June 29, 2026). The FLRA seeks reconsideration based on an intervening Supreme Court decision since briefing, *Mullin v. Doe*, 609 U.S. __, 2026 WL 1825840 (June 25, 2026),[1] which deprives this Court of jurisdiction over the Plaintiffs' claims. The FLRA further raises jurisdictional objections, which this Court can consider at any time. *See Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 434–35 (2011) ("Objections to subject-matter jurisdiction, however, may be raised at any time. Thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction.").

---

[1] Motions for reconsideration may be granted following "an intervening change in the controlling law." *United States ex rel. Witkin v. Medtronic, Inc.*, No. 11-CV-10790-IT, 2025 WL 3186943, at *2 (D. Mass. Nov. 14, 2025).

1

In *Mullin,* the Supreme Court vacated two circuit court decisions based on a judicial review bar that allows "no judicial review of any *determination* . . . with respect to the . . . termination" of a [Temporary Protected Status ("TPS")] designation." 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). The TPS statute allows the Secretary of Homeland Security ("Secretary") to grant temporary protected status to noncitizens from foreign countries suffering from certain dangerous conditions. *Id.* § 1254a. Once the Secretary designates a country for TPS, noncitizens from that country may remain in the United States legally. *Id.*

The TPS statute also permits the Secretary to terminate a country's TPS designation provided that he or she first: (1) consults with "appropriate agencies" about the country's conditions, (2) reviews those conditions, (3) determines whether the conditions continue to warrant a TPS designation, and (4) publishes a notice in the Federal Register. 8 U.S.C. § 1254a(b)(3)(A); *see also Mullin*, 2026 WL 1825840, at *17 (Kagan, J., dissenting).

In 2025, then-Secretary Kristi Noem published notice in the Federal Register that she was terminating the TPS designations for Syria and Haiti. *Id.* at *5-6. Both terminations were challenged in court and consolidated following a grant of certiorari. *Id*. at *7. The plaintiffs advanced claims under the Administrative Procedure Act ("APA") that the Secretary had acted contrary to law by "failing to engage in adequate consultation with other agencies before terminating TPS," and that "she had acted arbitrarily and capriciously by ignoring evidence of Haiti's true country conditions." *Id*. at *6-7. The same practice was adopted to terminate the TPS designation of other countries. *See id.* at *12 (listing Syria, Haiti, Ethiopia, Burma). As mentioned above, the TPS statute prohibits judicial review of the Secretary's determination to either grant or terminate a country's TPS status. 8 U.S.C. § 1254a(b)(5)(A).

2

An analogous judicial review bar applies to the appropriate-unit determinations that the Authority makes under the Interim Final Rule ("IFR")[2] and Delegation Memorandum.[3] As the Authority stated in its brief, "Congress barred judicial review of these 'final order[s] of the Authority related to appropriate units." Def.'s Cross-Mot. Summ. J. 4 (quoting 5 U.S.C. § 7123(a)(2)). In fact, this Court recognized in its June 29th Order that the Federal Service Labor-Management Relations Statute ("FSLMRS"):

> precludes from judicial review any 'order' arising out of a representation petition 'under . . . section 7112 . . . involving an appropriate unit *determination*,' 5 U.S.C. § 7123(a)(2)), which, under the IFR's new scheme, render these decisions, which were previously subject to the review procedures under 5 U.S.C. § 7105(f), *see* 5 U.S.C. §§ 7105(e)(1)(A), 7105(f), *statutorily and judicially unreviewable*.

June 29th Order at 29 (emphasis added) (citing D. 21 at 19). The Plaintiffs similarly interpret 5 U.S.C. § 7123 as barring judicial review of determinations issued under the IFR procedures. *See* Pls.' Mot. Summ. J. 19 ("Now, when the Interim Final Rule's elimination of agency review is paired with the [FSLMRS]'s carve-out of any 'order under . . . section 7112. . . involving an appropriate unit determination' from its judicial review scheme, 5 U.S.C. § 7123, Plaintiffs will be unable to appeal to any forum certain vitally important decisions that harm both their own and their members' rights."); *id.* at 25 (". . . paired with the FSLMRS provision precluding judicial review of all 'order[s] under . . . section 7112' that 'involv[e] an appropriate unit determination,' 5 U.S.C. § 7123, means that under the Interim Final Rule, the FLRA may be not only the first, but the only, body making these important unit determinations."); Compl. ¶ 65 ("This

---

[2] *Meaning of Terms as Used in This Subchapter; Representation Proceedings; National Consultation Rights and Consultation Rights on Government-wide Rules or Regulations; Miscellaneous and General Requirements*, 91 Fed. Reg. 13933 (Mar. 24, 2026).

[3] *Amendment to Memorandum Describing the Authority and Assigned Responsibilities of the General Counsel of the Federal Labor Relations Authority*, 91 Fed. Reg. 13949 (Mar. 24, 2026).

3

elimination of an entire level of review is particularly harmful considering that under the

[FSLMRS], any 'order' arising out of a representation petition 'involving an appropriate unit

determination' is carved out of the [FSLMRS's] provision for judicial review of FLRA

'order[s].'").

Even prior to *Mullin*, the Supreme Court held that the APA's "basic presumption of

judicial review . . . can be rebutted by a showing that the relevant statute 'precludes' review."

*DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 16-17 (2020) (quoting *Abbott Lab'ys v. Garner*, 387

U.S. 136, 140 (1967)); *see also* 5 U.S.C. § 701(a)(1). The language in 5 U.S.C. § 7123(a) clearly

rebuts this presumption. Section 7123 of the FSLMRS states:

> Any person aggrieved by any final order of the Authority other than an order
> under--
>
> . . .
>
> (2)    section 7112 of this title (*involving an appropriate unit determination*),
>
> may, during the 60-day period beginning on the date on which the order was
> issued, institute an action for judicial review of the Authority's order in the United
> States court of appeals in the circuit in which the person resides or transacts
> business or in the United States Court of Appeals for the District of Columbia.

(emphasis added). The United States Court of Appeals for the District of Columbia Circuit in

*Ass'n of Civilian Technicians, Inc. v. FLRA*, held that, as a matter of plain language, "FLRA

section 7123 'precludes judicial review' of appropriate unit determinations, [so] the district court

properly held that it lacked jurisdiction to hear this case." 283 F.3d 339, 341 (D.C. Cir. 2002)

(quoting 5 U.S.C. § 701(a)(1) ("statutes preclude judicial review")).

This is especially relevant in this case in the wake of *Mullin*, where the Supreme Court

barred judicial review of the plaintiffs' APA claims based on its plain language reading of

"determination" in the TPS statute's judicial bar provision. 2026 WL 1825840, at *7.[4] An order

under section 7112 is itself a "determination" in its ordinary sense. *See* 5 U.S.C. § 7112

(provision is titled "*Determination* of appropriate units for labor organization representation"

(emphasis added)); *see also id.* § 7112(b) ("A unit shall not be *determined*. . . ." (emphasis

added)). The FSLMRS clearly views determinations in its ordinary sense, not just a specific

substantive determination. *See id.* § 7114(a)(4) (". . . the agency and the exclusive representative

may *determine appropriate techniques,* consistent with the provisions of section 7119 of this

title, to assist in any negotiation" (emphasis added)); *id.* § 7119 ("The [Federal Mediation and

Conciliation] Service shall *determine* under what circumstances and *in what manner it shall

provide services and assistance*" (emphasis added)); *see also Mullin*, 2026 WL 1825840, at *9

(looking at the uses of the term "determine" throughout the TPS statute). Consistent with the

Statute's use of "determine" in the ordinary sense for describing decisions leading up to a

substantive result, the *Mullin* Court recognized that "determinations," in their ordinary sense,

"may also be used to describe the chain of events leading up to a decision." *Id.* at *7.

    *Mullin* also noted that the TPS statute's judicial review bar uses the phrase "with respect

to," which it found has a "broadening effect." *Id.* (quoting *Patel v. Garland*, 596 U. S. 328, 339

(2022) (internal quotation marks omitted)). Similarly, the FLRA's judicial bar provision includes

orders "*involving*" such determinations, which means Congress intended the term "order" to be

---

[4] The Plaintiffs bear the burden to show that the Statute "provide[s] expressly, or may signal in some other clear way, that it employs a common term in a way that departs from its ordinary meaning, but without strong proof of such a departure, commonly used terms should be given their common meaning." *Mullin,* 2026 WL 1825840, at *9 (citing *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025)).

broader than just those determinations.[5] 5 U.S.C. § 7123. The Supreme Court has, in another context, concluded that the "word 'involving' is broad[.]" *Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 273 (1995). While "involving" can have slightly different meanings, *Barnes v. G4s Secure Sols. (USA) Inc.*, No. 1351, 2026 WL 296990, at \*2 (6th Cir. Feb. 4, 2026), any shading of the meanings creates a broadening effect, because the "appropriate unit determination" need only be a *part* of the claim or matter under consideration. The FSLMRS recognizes that compliance with related regulations is *part* of the "appropriate unit determination." *See* 5 U.S.C. § 7105(a)(2)(A) ("The Authority shall … in accordance with regulations prescribed by the Authority . . . determine the appropriateness of units for labor organization . . . ."). Moreover, consistent with the FLRA's briefs, *see* Def.'s Cross-Mot. Summ. J. 22, in the analogous context of the National Labor Relations Board ("NLRB"), circuit courts have acknowledged that Congress provided the NLRB with broad discretion to make procedural decisions within the ambit of appropriate unit determinations.

As the Supreme Court held in *Mullin*, "[i]f the final agency action is unreviewable, then so too are subsidiary determinations." 2026 WL 1825840, at \*10. In the two circuit cases *Mullin* cited as examples, *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) and *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 506 (D.C. Cir. 2019), the circuit courts shielded from review procedural defects, including challenges to broader rules, that dictated the procedures used in each determination. *Mullin*, 2026 WL 1825840, at \*10; *see Amgen*, 357 F.3d at 113 ("If a no-review provision shields particular types of administrative action, a court may not inquire

---

[5] For example, "order[s] . . . involving . . . appropriate unit determination[s]" could include "procedural orders" resolving such matters as *how* the Authority will make a determination. *Cf. Ashford Univ., LLC v. Sec'y of Veterans Affs.*, 951 F.3d 1332, 1343 (Fed. Cir. 2020) (referring to "procedural orders").

whether a challenged agency decision is arbitrary, capricious, or procedurally defective, but it must determine whether the challenged agency action is of the sort shielded from review."); *DCH Reg'l Med. Ctr.*, 925 F.3d at 506 ("DCH's proposed distinction between methodology and estimates would eviscerate the statutory bar, for almost any challenge to an estimate could be recast as a challenge to its underlying methodology."). The Court reasoned that "[t]his important principle ensures that challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering." *Mullin,* 2026 WL 1825840, at \*10. In other words, the *Mullin* plaintiffs did not avoid the judicial bar by framing their APA claims as merely challenging an alleged new procedural policy *not* to consult with agencies. *See id*. at \*5 (calling the Secretary's actions part of a "new, restricted approach"); Respondents' Brief, *Mullin*, 2026 WL 1047521 at \*12 (Apr. 13, 2026) (describing the Secretary's "procedure" and related "policy"); *id.* at 19 (alleging a "*de facto* policy"); *id.* ("Unlawful policies and practices can infect a single termination, as they did here."); *id.* at 34 ("unexplained divergence from past practice"); *see generally Mullin,* 2026 WL 1825840, at \*7 ("plaintiffs challenged '*how* the Secretary went about making her determination,' not the ultimate TPS termination decision itself."). Just as the *Mullin* plaintiffs could not challenge the then-Secretary's process in reaching her TPS determinations, the Plaintiffs may not challenge the Authority's decision not to require Regional Directors to first issue a preliminary opinion before reaching its determinations.[6] 2026 WL 1825840, at \*10. Both are procedural

---

[6] To the extent that *Apple, Inc. v. Vidal* seems to suggest that judicial bars apply only to substantive decisions and not to "the manner in which the agency's" decision is addressed (*see* 63 F.4th 1, 13 (Fed. Cir. 2023)), the Supreme Court in *Mullin* clarifies that judicial bars cover antecedent procedural decisions. *See Mullin,* 2026 WL 1825840, at \*17-18 (Kagan, J., dissenting) (recognizing the majority opinion would bar review of the Secretary's non-compliance with a statutory notice requirement).

decisions that undergird, and are antecedent to, the determinations.[7] As the Authority discussed

in its briefs, Def.'s Cross-Mot. Summ. J. 4-6, Regional Directors are delegatees who assume the

person of the principal (the Authority) in exercising delegated powers. *See Myers v. United

States*, 272 U.S. 52, 133 (1926) ("Each head of a department is and must be the President's alter

ego…"); s*ee also Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 141 (1971) ("'[T]he regional

directors are required to… act in all respects as the Board itself would act.'") (quoting statement

of Sen. Barry Goldwater, 105 Cong. Rec. 19770) (1950)). The Federal Circuit concluded in an

analogous context that a judicial review bar necessarily encompasses the principal's instructions

to delegatees on how to process delegated claims because such instructions ensure conformance

with how the principal herself would process the claims. *See Apple*, 63 F.4th at 1. Of course,

modification or revocation of the delegation is another way to achieve conformity. *See*

*Magnesium Casting Co.*, 401 U.S. at 140-41 (holding that the NLRB could forego plenary

review of determinations reached by Regional Directors). Thus, consistent with *Apple*, if judicial

review bars do not permit courts to review a principal's general instructions to delegatees on how

to approach delegated decisions, then the FLRA's judicial review bar divests jurisdiction over

not only the Authority's instructions to its Regional Directors on appropriate unit determinations,

but also its revocation of the antecedent delegation to render such determinations. 63 F.4th at 13.

---

[7] Like *Mullin* and unlike *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 492 (1991)*,* the Plaintiffs are not challenging a broader program or system beyond the procedural rules that lead to the discrete acts in question – the appropriate unit determination barred from judicial review. *See Mullin,* 2026 WL 1825840, at *8. In *McNary,* the plaintiff challenged the system's rules beyond the specific rules that undergird the determination that was barred from judicial review. *Id.* For example, constitutional or statutory challenges to rules that apply to all hearings before the FLRA may be preserved under *McNary.* Most importantly, *McNary* "did not adopt the broad principle that the term 'determination' applies only to substantive matters." *Mullin,* 2026 WL 1825840, at *8.

Here, the Plaintiffs challenge, as procedurally defective under the APA, the Authority's policy that it will determine appropriate units without a Regional Director's preliminary opinion. They essentially question *how* the Authority will reach its determinations. *See* June 29th Order at 16 ("Plaintiffs challenge … (1) the revocation of delegated authority to regional directors under 5 U.S.C. § 7105(e)(1) and (2) the resulting elimination of the appeals process under 5 U.S.C. § 7105(f)…."). However, the Authority's subsidiary decision to take plenary review of cases is intertwined with the ultimate determination. *Mullin*, 2026 WL 1825840, at *10 ("If the final agency action is unreviewable, then so too are subsidiary determinations." (citing *Amgen*, 357 F.3d at 113; *DCH Reg'l Med. Ctr.*, 925 F.3d at 506)). Moreover, if the Court believes that there is even a possibility that the rule encodes some substantive judgment as to future determinations, *see* June 29th Order at 12-13 (questioning whether the IFR may be substantive in nature), then the propriety of such a substantive rule would be bound up in the judicial bar against challenges to the process leading up to the determination. *See Ass'n. of Civilian Technicians,* 283 F.3d at 343.

*Mullin* rejected procedural arguments and claims much stronger and more impactful than the claims here. There, the claims involved alleged violations of procedure *required* by the statute in addition to arbitrary and capricious claims. *See Mullin,* 2026 WL 1825840, at *6 (noting underlying claims were APA claims that the determination was "contrary to law and arbitrary and capricious").

The Respondents in *Mullin* described their claims similar to the claims raised by the Plaintiffs as follows: "Respondents do not challenge the substantive correctness of the Secretary's determination with respect to country conditions in Haiti or her assessment of the U.S. national interest. *Rather, they challenge the procedures by which, and the policies under*

*which, she made that determination and assessment.*" *See* Respondents' Brief, *Mullin*, 2026 WL 1047521 at \*18 (emphasis added); *see also id.* at \*13 ("Respondents are likely to prevail on their APA claims because the Secretary failed to comply with the periodic review process prescribed by Section 1254a(b)(3)(A). She did not fulfill her *obligation to consult with other agencies*; she based the termination of Haiti's TPS designation on criteria not allowed by the statute; *she departed from past practice without explanation*; she disregarded the evidence in the administrative record; she justified her action on pretextual grounds; and she reached a preordained outcome.") (emphasis added). Despite the TPS statute's requirements, the Court found those arguments to be unavailing and barred from judicial review.

In fact, the Court even suggested that judicial review may be unavailable for extremely egregious hypotheticals: "For example, a rogue Secretary in one fell swoop could issue a 50-year TPS designation, contrary to the 18-month statutory cap. Or a Secretary could terminate a TPS designation based on a coin flip." *Mullin*, 2026 WL 1825840, at \*10. The Court reasoned that: "Sometimes Congress decides that the political process is the proper forum for remedying improper conduct." *Id.* (quoting *Nat'l TPS All. v. Noem*, 169 F. 4th 796, 807 (9th Cir. 2026) (Bumatay, J., dissenting from denial of reh'g en banc)). If the courts may not provide a remedy under the APA against a Secretary who issues a 50-year designation or abrogates her duty to decide the issue by leaving it to a coin flip in violation of the governing statute, courts are also without jurisdiction to vacate a change to a delegation to render a determination that is legally permitted by statute.

In conclusion, the Court's rationale in *Mullin* is sufficiently analogous to warrant reconsideration in this case. *Mullin* found a judicial review bar – similar to the bar in 5 U.S.C. § 7123(a)(2) – applies even when the agency allegedly acts contrary to law and arbitrarily

departs from past procedures *sub silentio.* Here, the FLRA provided notice of a change in delegation and associated procedures (all fully consistent with its statutory discretion) to describe how procedural decisions may be made in future appropriate unit determinations that are barred from judicial review. If, under *Mullin*, procedural defects, such as unexplained departures from past practice, APA "arbitrary and capricious" or "contrary to law" violations, or other statutory procedural violations, cannot be asserted in court against the FLRA's appropriate unit determinations and their subsidiary steps, consistent with *Mullin*, then allegations of arbitrary changes to prospective delegations in future determinations are equally outside this Court's jurisdiction.

## CONCLUSION

For the foregoing reasons, the FLRA respectfully requests the Court grant its motion for reconsideration.

Respectfully submitted,

By:    /s/ Thomas Tso
       THOMAS TSO
       Solicitor

       Rebecca J. Osborne
       Deputy Solicitor
       Adam M. Johnson
       Attorney
       Elizabeth R. Wiseman
       Attorney

       Federal Labor Relations Authority
       1400 K Street, N.W.
       Washington, D.C. 20424
       (771) 444-5779
       ttso@FLRA.gov

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on July 6, 2026, the above document was filed through the Electronic Case Filing system for filing and service was accomplished for the registered participants.

/s/ Rebecca J. Osborne
REBECCA J. OSBORNE